**GROOM v. CARDILLO, Deputy Com'r (BANK OF COMMERCE & SAVINGS, Inc., et al., Interveners).**

No. 7630.

United States Court of Appeals for the District of Columbia.

Argued Feb. 10, 1941.

Decided March 31, 1941.

M. D. Rosenberg and Leon Pretzfelder, both of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., Bernard Margolius, Dennis McCarthy, and Albert Goldstein, Asst. U. S. Attys., and James E. McCabe and Charles T. Branham, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

GRONER, C. J.

On January 10, 1939, appellant, a teller employed by the Bank of Commerce & Savings in Washington, suffered a relapse of an old tubercular condition. He was then admitted to Glenn Dale Sanatorium and later transferred to Garfield Hospital, where he was confined as a tubercular patient. His services at the bank had continued for a period of two and a half years and required his presence at the bank from 8:30 in the morning until approximately 3:30 in the afternoon. He waited on customers at a teller's window and handled Christmas savings accounts and payments of gas, electricity, and telephone bills, including the stamping of stubs showing such payments. Appellant filed a claim

698

with the Deputy Compensation Commissioner,[1] alleging that the standing at the bank, talking to customers, and the constant use of his arm in stamping stubs caused an exacerbation of arrested tuberculosis. The Deputy Commissioner, after hearing, rejected the claim. His findings of facts show:

"that from February, 1934 to April, 1936, the claimant had been confined as a patient in a tubercular hospital; that during the said time he had a tubercular lesion of the right lung with infiltration; that he also developed a cavity in the right lung; that pneumothorax treatment was given him; that on April 6, 1936, he was discharged from the hospital as an apparently arrested case of tuberculosis; that he was advised by the attending physician that he could engage in employment as a bank teller; that in May of 1936, he started to work as a bank teller for the employer, whose vice president is claimant's brother; that pneumothorax treatment was continued once a week to keep the right lung collapsed; that after starting work and with continued treatment, the claimant's condition remained satisfactory; that he performed his duties without difficulty and that he made no complaints regarding the nature of his work; that he felt well, gained weight, and continued to work without loss of time up to January 10, 1939; that the stamping of the stubs did not require any jerking of the shoulder or movement of the right arm above the shoulder level; that there were no hazards connected with the employment to cause or to activate a tubercular condition; that the hemorrhage suffered by the claimant on January 10, 1939, and his subsequent illness did not result from the conditions of his employment; that he did not sustain an accidental injury arising out of and in the course of his employment or contract an occupational disease arising naturally out of such employment; that the employer and insurance carrier are not liable for the payment of compensation to the claimant."

Upon rejection of the claim, appellant brought his statutory proceeding in the District Court to have the order of the Deputy reviewed and enjoined. The District Judge sustained the Deputy's conclusion and dismissed the complaint. This appeal followed.

Appellant's position is that the findings and conclusion of the Deputy are not supported by any substantial evidence and are contrary to law.

■ The rule by which we are bound in cases of this character has been stated by us innumerable times. We may not set aside the order of the Deputy except where it appears that there is an error of law or that the finding is not supported by substantial evidence or perhaps where it is clearly arbitrary and unreasonable. It is of no consequence that we might have reached a different conclusion or that there is a sharp conflict in the testimony or even that the evidence preponderates strongly against the view expressed by the Deputy. We cannot substitute our judgment for the Deputy's judgment, nor can we weigh the evidence. Potomac Electric Power Co. v. Cardillo, 71 App.D.C. 163, 107 F.2d 962; Maryland Casualty Co. v. Cardillo, 71 App.D.C. 160, 107 F.2d 959; Williams v. American Employers' Ins. Co., 71 App.D.C. 153, 107 F.2d 953; Maryland Casualty Co. v. Cardillo, 70 App.D.C. 121, 104 F.2d 254; Employers Liab. A. Corp. v. Hoage, 67 App.D.C. 245, 91 F.2d 318; Aetna L. I. Co. v. Hoage, 64 App.D.C. 185, 76 F.2d 435; Employers' Liab. Corp. v. Hoage, 63 App.D.C. 53, 69 F.2d 227.

■ Here the Deputy, after hearing medical testimony, found that the injury did not arise out of the employment. We have examined this evidence, and we discover there substantial support for the Deputy's conclusion. It shows that appellant had had an open cavity in the right upper lobe of the lung, probably since his discharge from the hospital in 1934, but certainly since 1936, that this cavity indicated active tuberculosis and that in this situation any exertion, even raising the arm to put on a hat, or to shave, might at any time cause a hemorrhage in the cavity. Appellant's theory is that the use of the cancellation stamp at the teller's window in the bank caused a healed scar in the right lung to tear or break loose, precipitating a hemorrhage. Doctor Coulter, Director of the Bureau of Tuberculosis of the District of Columbia, however, was of opinion—even assuming the wound had healed—that this was a mistaken view, since the use of the stamp did not require appellant to raise his arm to a 90-degree

---

[1] Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., made applicable in the District of Columbia by D.C.Code, tit. 19, c. 2, Secs. 11, 12, 45 Stat. 600, 33 U.S.C.A. § 901 note.

angle, which was necessary to stretch the upper part of the chest. In his opinion there was no causal connection between appellant's work in the bank and the hemorrhage. Doctor West, who testified for appellant, was also of opinion that appellant's arm must have been raised at an angle of 90 degrees or over to affect the diseased portion of his lung, and Doctor Davis, who performed an operation on the lung after the hemorrhage, in reply to a long hypothetical question of appellant's counsel whether the work caused or contributed to the hemorrhage, stated he couldn't say whether it did or whether it did not. Other physicians examined as witnesses were of opinion that, in view of appellant's then condition, the hemorrhage might have come from any one of half a dozen different causes, most of which had no relation to the work in which he was engaged at the time. In like circumstances we have said "The mere fact that the injury is contemporaneous or coincident with the employment is not a sufficient basis for an award". Ayers v. Hoage, 61 App.D.C. 388, 389, 63 F.2d 364, 365. In other courts as well it has been said that to justify an award there must be a direct causal connection between the employment and the injury, whether it be the result of accident or disease. Madore v. New Departure Mfg. Co., 104 Conn. 709, 134 A. 259.

Applying the rule we have stated to this evidence, we are of opinion that we are bound by the Deputy's findings and must, therefore, affirm the judgment of the court below.

Affirmed.