Kenneth M. GARDNER, Sr., Petitioner,

v.

The DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondents,

v.

BATH IRON WORKS CORPORATION and Commercial Union Insurance Companies, Respondents.

BATH IRON WORKS CORPORATION and Commercial Union Insurance Companies, Petitioners,

v.

The DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondents,

v.

Kenneth M. GARDNER, Sr., Respondents.

Nos. 80–1021, 80–1085.

United States Court of Appeals, First Circuit.

Argued June 3, 1980.

Decided Feb. 11, 1981.

---

Stephen Hessert, Gorham, Maine, with whom Norman & Hanson, Portland, Maine, was on brief, for Bath Iron Works Corp. and Commercial Union Ins. Companies.

Gilbert T. Renaut, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Carin Ann Clauss, Sol. of Labor, and Laurie M. Streeter, Associate Sol., Washington, D. C., were on brief, for federal respondent.

Jonathan W. Reitman, Brunswick, Me., with whom McTeague, Higbee & Tierney, Brunswick, Me., were on brief, for claimant-petitioner.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and CAFFREY, District Judge.*

CAFFREY, District Judge.

These cross-appeals arise from a dispute between Kenneth Gardner and Bath Iron Works Corporation (hereinafter Bath) over Mr. Gardner's claim that he is entitled to disability compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (hereinafter the Act).

Mr. Gardner originally filed his claim for compensation under the Act in February 1975. He alleged that the conditions of his employment at Bath aggravated his preexisting bilateral venous insufficiency (diffi-

---

* Of the District of Massachusetts, sitting by designation.

culty with varicose veins) so as to render him disabled. That claim was contested by Bath and at an administrative hearing in December 1977 evidence was offered by both sides.

The evidence submitted to the Administrative Law Judge established that Mr. Gardner's difficulties with varicose veins had become manifest in the early 1940's while he was still on active duty in the armed forces. As a result of those difficulties he was hospitalized on two occasions during his tour of duty and received treatment in the form of injections. During that time period he was informed by a service physician that his vascular condition in his lower extremities would worsen with time.

In the time period between 1945 and 1960 his vascular condition continued to trouble him and in 1960 he was told to wear elastic stockings whenever he was on his feet.

In 1964 he started to work at Bath where his job involved continuous standing on concrete, steel or wood surfaces for forty hours a week. Although he continued to wear elastic stockings from 1964 to 1971, he was once again hospitalized in 1971 and surgery was performed to strip the veins in both of his legs. As a result of the surgery he was unable to work for four months. He returned to work in October 1971 and continued on the job despite difficulties with his legs until July 23, 1974. At that time he was advised by his physician to remain out of work until his condition improved. He did not return to work until September 9, 1974. Mr. Gardner maintains that he is entitled to be compensated for total disability between July 23, 1974 and September 9, 1974 and for a permanent partial disability thereafter.

After the hearing the Administrative Law Judge found that the circumstances of Mr. Gardner's employment aggravated his preexisting condition in such a way as to render him totally disabled from July 23 to September 9, 1974 and partially disabled thereafter. He ruled that the aggravation

of a preexisting condition is compensable under the Act and awarded both permanent and temporary disability to Mr. Gardner.

Bath appealed the Administrative Law Judge's decision to the Benefits Review Board (hereinafter the Board) of the Department of Labor asking that it be set aside. Bath argued both that it contained errors of law and that the Administrative Law Judge had made findings of fact which were not supported by substantial evidence.

The Board ruled that there was sufficient evidence to support factual findings that Mr. Gardner's job situation aggravated his preexisting condition and that Mr. Gardner had been totally disabled thereby for the time period between July 23, 1974 and September 9, 1974. It affirmed the ruling that in Mr. Gardner's case the aggravation of a preexisting condition was compensable under the Act and upheld the award of temporary total disability. However the Board went on to rule that there was no evidence to support the Administrative Law Judge's finding that Mr. Gardner had a permanent partial disability after September 9, 1974 and reversed his ruling that Mr. Gardner was entitled to compensation for a permanent disability of 10%.

Mr. Gardner seeks review of the Board's decision insofar as it reversed the decision of the Administrative Law Judge as to his permanent partial disability. Bath and it's insurance carrier appeal from the Board's decision to the extent that it upheld the Administrative Law Judge. For the reasons set forth below we affirm the decision of the Board.

*Temporary Total Disability*

After an evidentiary hearing the Administrative Law Judge found that the conditions of Mr. Gardner's employment presented a zone of special danger to someone with his leg problems and that the injury for which he sought to recover compensation for the time period between July 23, 1974 to September 7, 1974 arose naturally out of and in the course of his employment within

the meaning of the Act. He ruled that the aggravation of a preexisting condition may be compensable under the Act.[1]

On appeal to the Board, Bath contended that the findings of the Administrative Law Judge were not supported by substantial evidence and that his decision contained errors of law. While Bath conceded that an employee filing a claim under the Act is entitled to a presumption that his claim comes within the provision of the Act,[2] it argued that it had rebutted that presumption by presenting substantial evidence that Mr. Gardner's condition resulted from the normal progression of his disease and was unrelated to the circumstances of his employment. It argued that after the presumption was rebutted there was no evidence upon which the Administrative Law Judge could find that Mr. Gardner's job situation had any impact on the progress of his pre-existing disease. At best, Bath contended, the evidence established that the conditions of Mr. Gardner's employment caused the *symptoms* incident to the disease process to manifest themselves temporarily and that such a flare-up of symptoms would not constitute an aggravation of the underlying preexisting condition.

Bath's final argument was that even if there was evidence upon which the Administrative Law Judge could base a finding that the conditions of Mr. Gardner's employment aggravated the underlying disease itself, such an aggravation would not constitute a compensable injury within the meaning of the Act since it is neither an "accidental injury" nor an "occupational disease." Bath based its argument on the provisions of 33 U.S.C. § 903(a) and § 902(2). 33 U.S.C. § 903(a) provides:

Compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury.

Injury is defined in § 902(2) as:

[A]ccidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as arises naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

Bath maintained that in order for an injury to be "accidental" it must have either an unexpected cause or an unexpected result and that either the cause or the result must be traceable to a definite time.

Bath further argued that an "occupational disease" is a disease which results from an increased risk to which the worker as distinguished from the general public has been subjected by reason of his employment. Bath contended that because the act of standing on one's feet is not peculiar to Mr. Gardner's employment situation, but is a condition common to all persons, his condition cannot be considered an "occupational disease."

The Board ruled that there was substantial evidence to support a finding that Mr. Gardner's preexisting venous insufficiency had been aggravated by his job situation. It further ruled that the injury in Mr. Gardner's case was "accidental" within the meaning of the Act. In so ruling the Board relied upon the decision of the Court of Appeals for the Fifth Circuit in *Glens Falls Indemnity Co. v. Henderson*, 212 F.2d 617 (1954).

■ Our review of the Board's decision is very limited in scope. Our consideration is limited to errors of law, including the issue of whether or not the Board properly applied the substantial evidence rule in re-

---

1. It is conceded by Bath that although the Administrative Law Judge did not expressly find that Mr. Gardner's preexisting condition was aggravated by the circumstances of his employment such a finding is implicit in his decision.

2. 33 U.S.C. § 920(a) provides:

In any proceeding for the enforcement of a claim for compensation under the Chapter it shall be presumed, in the absence of substantial evidence to the contrary—

    (a) That the claim comes within the provisions of this Chapter.

viewing the factual findings of the Administrative Law Judge. *Air America v. Director, Office of Workers' Compensation Programs*, 597 F.2d 773, 776–77 (1st Cir. 1979), *Bath Iron Works Corp. v. White*, 584 F.2d 569, 573–74 (1st Cir. 1978).

■ We rule that the Board properly applied the substantial evidence rule to the Administrative Law Judge's implied finding that Mr. Gardner's job situation aggravated his preexisting venous insufficiency. In so ruling we need not consider Bath's argument that it rebutted the presumption set forth in Section 920(a) because there was ample evidence presented at the hearing upon which the Administrative Law Judge could find that Mr. Gardner's preexisting condition was aggravated by the conditions of his employment.

Documentary exhibits authored by Mr. Gardner's attending physician, Dr. Wilfred A. Cloutier, tended to establish that Mr. Gardner's job situation had severely aggravated his condition and Dr. Raymond Dominici, Bath's Medical Director, testified that Mr. Gardner's "symptoms" were worsened by working and that in August 1974 he had recommended a thirty day leave of absence for Mr. Gardner for further medical treatment because Mr. Gardner's left leg was aggravated by working.

Moreover we attach no significance to the distinction which Bath attempts to draw between acceleration of the underlying disease process and a mere manifestation of symptoms. There was ample evidence upon which the Administrative Law Judge could find that Mr. Gardner's job situation combined with his preexisting disease in a manner which rendered him totally disabled for a period of months. Whether circumstances of his employment combined with his disease so to induce an attack of symptoms severe enough to incapacitate him or whether they actually altered the underlying disease process is not significant. In either event his disability would result from the aggravation of his preexisting condition. *See Nardella v. Campbell Machine, Inc.*, 525 F.2d 46 (9th Cir. 1975).

We must next consider the issue of whether the Board correctly ruled that the aggravation of the preexisting condition in this case constituted an "accidental injury" within the meaning of the Act.

■ This section of the Act governing coverage provides that compensation shall be payable for disability or death resulting from an "injury" occurring upon the navigable waters of the United States or in certain adjacent areas. 33 U.S.C. § 903(a). Section 903 does not refine the concept of "injury", but the definitional section defines the term to include both "accidental injury" and "occupational disease" arising out of employment, *id.* at § 902(2). Bath argued unsuccessfully to the Board that the definitional section bars compensation in this case because Mr. Gardner knew that prolonged standing would aggravate his condition and thus his injury was not an unexpected accident, but the foreseeable result of continued employment. We agree with the Board that the foreseeability of Mr. Gardner's injury does not bar compensation.

Bath would find in the definitional section an independent condition of coverage based upon the claimant's state of mind with respect to his injury. The coverage section itself, however, speaks directly to this issue by excluding from coverage injury due to "the willful intention of the employee to injure or kill himself or another." § 903(b). Whatever "willful" might mean in this context, it clearly requires a much higher degree of intent than knowledge. Bath's reading of "accidental" would swallow up the statute's narrowly circumscribed exception for intentional self-injury and render meaningless the corresponding presumption in favor of the claimant created in § 920(d). We also detect in foreseeability the flavor of a defense of contributory negligence of the employee, which is not available to the employer under the Act.

We find in the Act's carefully tailored combination of exception and presumption a statutory scheme at odds with Bath's interpretation and therefore reject a separate test of unforeseeability. The meaning of

"accidental", which caused great uncertainty under compensation statutes limited to injury caused by accident, loses significance under statutes like LHWCA which also cover occupational disease.[3] *See* 1B A. Larson, Workmen's Compensation Law § 39.60, at 7–315 (1980). Occupational disease is often a foreseeable risk of certain types of employment. A hiatus in coverage for foreseeable injuries that cannot be characterized as occupational diseases is inconsistent with the structure and purpose of the Act. The underlying assumption, that foreseeable aggravation is no accident, fails to appreciate that a worker such as Mr. Gardner works from necessity and not from choice. *See Glen Falls Indemnity Co. v. Henderson,* 212 F.2d 617 (5th Cir. 1954). In the absence of substantial evidence to rebut the presumption against intentional self-injury, we rule that the aggravation of Mr. Gardner's condition was a compensable injury even though he was forewarned that such aggravation would likely result from his continued employment.

At the hearing before the Administrative Law Judge Mr. Gardner testified that at Bath there are three skill ratings called, first, second and third class. He testified that first class skill is the top money classification and that he had been so rated for five years. He testified that at the time of the hearing he was being paid the first class skill rate of $6.11 per hour. He further testified that he worked a forty hour week with three weeks of vacation per year and that he had not missed any time from work in 1975, 1976 or 1977 as a result of his varicositis.

The Administrative Law Judge found that Mr. Gardner's actual earnings at the time of the hearing fairly and reasonably represented his actual wage earning capacity. The Administrative Law Judge also found that Mr. Gardner had a 10% loss of wage earning capacity in the labor market. He ruled that Mr. Gardner was entitled to an award of permanent partial disability benefits of 10%.

On appeal the Board of Review ruled that there was no evidence to support the conclusion that Mr. Gardner suffered from any economic disability after September 9, 1974. We concur in that ruling and rule that the Board properly applied the substantial evidence rule in reviewing the decision of the Administrative Law Judge.

■ Disability is defined under the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment." 33 U.S.C. § 902(10). For purposes of the Act therefore disability in the medical sense must be translated into disability in the economic sense. *Air America Inc. v. Director, Office of Workers' Compensation Programs, supra* at 777; *Welch v. Leavey,* 397 F.2d 189 (5th Cir. 1968), *cert. denied* 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 691 (1969). An award of permanent partial disability cannot be made unless the employee's wage earning capacity has been diminished *Bath Iron Works v. White, supra* at 574–75.

■ It is for this reason that we must look past the expert medical testimony as to Mr. Gardner's condition and consider Mr. Gardner's testimony regarding the impact that his condition had on his wage earning capacity in the time period subsequent to September 9, 1974.

There was no evidence that Mr. Gardner was unable to perform any of the tasks incident to his employment after September 9, 1974. In fact Mr. Gardner testified that at the time of the hearing his job entailed "practically the same" amount of stress on his legs as it did prior to July 23, 1974 and that he had not lost any time on the job as a result of his varicose veins since September, 1974. Having in mind the Administrative Law Judge's finding that his wages at the time of the hearing fairly represented his wage earning capacity, we rule that there was no substantial evidence upon which the Administrative Law Judge could find that Mr. Gardner had suffered a par-

---

3. Although Mr. Gardner's injury would seem to qualify as an occupational disease, we do not reach that issue since we affirm on the ground chosen by the Board.

tial permanent disability of 10% in the labor market, at least in terms of his forty hour work week.

In support of his argument for partial disability Mr. Gardner also relies on his testimony before the Administrative Law Judge that he had refused overtime on several occasions during the year preceding the hearing and that he "doesn't dare take the overtime on because it would affect [his] legs." This argument is clearly inconsistent with the Administrative Law Judge's finding that Mr. Gardner's actual post injury income fairly represented his wage earning capacity.[4]

■ Finally Mr. Gardner argues that the Board in reversing the award of permanent partial disability failed to properly apply the presumption created by 33 U.S.C. § 920(a). We rule that the presumption set forth in Section 920(a) relates only to the compensability of the underlying injury and not to whether the disability is temporary or permanent in nature, *Harrison v. Potomac Electrical Power Co.*, 8 BRBS 313 (May 1978); *Hunigman v. Sun Shipbuilding & Drydock Co.*, 8 BRBS 141 (1978) and therefore that Mr. Gardner's reliance on the presumption as to this issue is misplaced.

*The decision of the Board is affirmed.*

4. Even if we were to disregard that inconsistency Mr. Gardner testified that in the year preceding his injury he had worked overtime on "a couple of Saturdays." He also testified that he had worked overtime on two Saturdays in the year preceding the hearing and he stated that he was satisfied with his forty hours. Viewing the evidence as a whole there is no evidence that, in the absence of his medical problems, Mr. Gardner would have accepted more overtime than he did. Thus a finding of a permanent partial disability of 10%, even if based on the testimony relative to overtime, would not be supported by substantial evidence.