**Frank D. CRUM, Petitioner,**

v.

**GENERAL ADJUSTMENT BUREAU and Home Indemnity Company, Respondents.**

**GENERAL ADJUSTMENT BUREAU and Home Indemnity Company, Petitioners,**

v.

**Frank D. CRUM, Respondent.**

**Nos. 83–1825, 83–1876.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 23, 1984.

Decided July 6, 1984.

Peter J. Vangsnes, Washington, D.C., with whom James A. Mannino, Washington, D.C., was on the brief, for Crum, petitioner in No. 83–1825 and cross-respondent in No. 83–1876.

Joseph W. Pitterich, Chevy Chase, Md., for Gen. Adjustment Bureau, et al., respondents in No. 83–1825 and cross-petitioners in No. 83–1876.

Janet R. Dunlop and Donald S. Shire, Attys., Dept. of Labor, Washington, D.C., for Dept. of Labor, respondent in Nos. 83–1825 and 83–1876.

Before WRIGHT, TAMM and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

In these consolidated cases, Frank D. Crum and his former employer, the General Adjustment Bureau ("General Adjustment"), and the employer's insurer, Home Indemnity Company,[1] petition for review of a decision of the Department of Labor's Benefits Review Board ("BRB" or "Board"). The Board's decision awarded Mr. Crum temporary total disability benefits under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA" or "the Act")[2] for his work-related angina.

---

1. For ease of reference, both the claimant's employer, General Adjustment Bureau, and its insurance carrier, Home Indemnity Company, will be referred to collectively as "General Adjustment."

2. Prior to 1980, the LHWCA, 33 U.S.C. §§ 901–50 (1976), provided the workmen's compensation program to individuals employed in the

District of Columbia. D.C.Code Ann. § 36–301 (1973). The LHWCA no longer applies as the District of Columbia's worker's compensation program, having been superseded by the District of Columbia Worker's Compensation Act. D.C. Code Ann. §§ 36–301 et seq. (1981). Because Mr. Crum's claim arose before the 1980 enactment was passed, however, his claim is governed by

Mr. Crum argues that the BRB should have awarded him permanent total disability benefits. General Adjustment, on the other hand, contends that Mr. Crum should be denied benefits completely, or alternatively, that the BRB erred in awarding Mr. Crum total, albeit temporary, disability benefits as a result of his angina. We uphold the Board's order insofar as it awards benefits for total disability, but reverse the Board's determination that Mr. Crum's disability was merely temporary.

## I

Mr. Crum was employed as an insurance claims adjuster with the General Adjustment Bureau. With the exception of three years, from 1950–53, he was employed by General Adjustment from 1948 until January 3, 1977, when he retired at the age of 58. The events leading to Mr. Crum's retirement can be traced to 1969, when he first began experiencing chest pains upon any strenuous exertion. After being hospitalized for these pains, Mr. Crum returned to work, but continued to experience chest pains approximately once every two months. In 1975, Mr. Crum was transferred from Tennessee to General Adjustment's Washington, D.C. office. By this time, his chest pains were occurring approximately two or three times per week, even when he was not exerting himself. The pains had also become more severe and longer in duration.

Quite apart from his chest pains, Mr. Crum injured his neck during work on November 6, 1975, and underwent surgery for that injury.[3] While he recuperated from this surgery, his chest pains abated. Upon returning to work, however, the pains increased in frequency and were occurring two to three times per week. Mr. Crum's physician, Dr. Cioffi, advised him to quit his job if the pains did not cease. Although

he requested alternative work involving reduced hours and pressure, General Adjustment refused this request and informed Mr. Crum that he would have to maintain his production level or risk being fired. Mr. Crum finally retired on January 3, 1977, whereupon his chest pains decreased. At the time of the hearing before the Administrative Law Judge ("ALJ"), the chest pains were significantly reduced. Mr. Crum has not sought other work since his retirement from General Adjustment.

The ALJ, after a hearing, found that claimant's chest pains were symptomatic of his underlying coronary artery disease and that they arose out of and occurred during the course of his employment and were causally related to his employment. *Crum v. General Adjustment Bureau and Home Indemnity Company*, Nos. 78–DCWC–5, 6 (June 1, 1978), *reprinted in* Appendix ("App.") at 40. The ALJ further concluded that although claimant's injury was permanent, it was only a partial disability. App. 41. Thus, the ALJ awarded Mr. Crum $55.00 per week for this permanent partial disability.

On appeal, the Board agreed with the ALJ's determination that Mr. Crum's angina constituted compensable work-related injury within the meaning of the LHWCA. *Crum v. General Adjustment Bureau*, 12 B.R.B.S. (BNA) 458, 461–62 (1980). The Board reversed the ALJ's determination that Mr. Crum's injury was a permanent partial disability, and instead strongly suggested that the injury was a temporary total disability. *Id.* at 465–66. It based this conclusion in part on the fact that the employer, General Adjustment, had failed to adduce evidence that Mr. Crum was not totally disabled. The Board therefore remanded the case to the ALJ for further consideration.

the LHWCA. *See Stevenson v. Linens of the Week*, 688 F.2d 93, 95 n. 1 (D.C.Cir.1982).

**3.** Mr. Crum was awarded benefits under the Act for his neck injury. The ALJ found that Mr. Crum had suffered a 15 percent partial permanent disability as a result of the neck injury and

ordered that he be paid $33.00 per week in benefits for this injury. *Crum v. General Adjustment Bureau*, Nos. 78–DCWC–5, 6 (June 1, 1978), *reprinted in* Appendix ("App.") at 38, 42. This aspect of the ALJ's determination was not appealed and therefore is not before us.

On remand, the ALJ determined that claimant was entitled to benefits for a partial, temporary disability. On appeal, the BRB once again reversed the ALJ's determination that Mr. Crum was entitled to benefits for only a partial disability. The Board found that the employer had failed to meet its burden of proof of showing that suitable alternate employment opportunities existed for Mr. Crum. Thus, in the Board's view, General Adjustment failed to demonstrate that Mr. Crum was not totally disabled. *Crum v. General Adjustment Bureau*, No. 80–1457, slip op. at 4–6 (June 10, 1983), *reprinted in* App. at 4–6. The Board therefore modified the ALJ's award to provide for temporary total disability benefits. *Id.* at 8. These petitions for review followed.

## II

■ Under the LHWCA, the Board is obligated to treat the ALJ's findings of fact as conclusive if supported by substantial evidence on the record as a whole.[4] 33 U.S.C. § 921(b)(3). *O'Keeffe v. Smith, Hinchman & Grylls Associates*, 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965) (per curiam). In reviewing the BRB's decision, therefore, this court must ascertain (1) whether the Board adhered to the applicable scope of review, (2) whether the Board committed any errors of law, and (3) whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Stevenson v. Linens of the Week*, 688 F.2d 93, 96–97 (D.C.Cir. 1982); *Maurice P. Foley v. Balderson*, 569 F.2d 132, 134 (D.C.Cir.1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 80, 58 L.Ed.2d 109 (1978). Findings such as those at issue here—the extent and nature of the disability—are entirely factual in nature, as this court has previously recognized. *Maurice P. Foley*, 569 F.2d at 134 n. 2. With this standard of review clearly in mind, we turn to each of the parties' contentions.

## A

General Adjustment first argues that the Board and the ALJ erred in awarding Mr. Crum any benefits whatsoever for his angina. In essence, General Adjustment contends that because angina is not a disease, but merely a manifestation or symptom of coronary artery disease, and since claimant's employment concededly did not cause his disease, he has suffered no compensable injury within the meaning of the Act. General Adjustment maintains that to conclude otherwise would be tantamount to declaring that the Act "provided general health insurance ... rather than insurance for work-related injuries or illnesses." Brief for Respondents at 12. We disagree.

Under section 903(a) of the LHWCA, compensation is available for, among other things, the "disability" of an employee covered by the Act. Section 902(10) defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury." Section 902(2), in turn, defines "injury" in the following manner:

> "Injury" means accidental injury or death arising out of and in the course of employment and such disease or infection as arises naturally out of such employment....

The ALJ and the Board both rejected General Adjustment's argument that angina does not fit within this definition of "injury." First, both the ALJ and the Board observed that the evidence, which consisted primarily of the testimony of Mr. Crum's personal physician and General Adjustment's examining physician, clearly demonstrated that claimant's chest pains were causally related to his employment. The pains were greatly exacerbated by his work and abated when he was not working. Second, the ALJ and the BRB reasoned that symptoms or manifestations of diseases, to

---

**4.** Workmen's compensation claims under the LHWCA are adjudicated in the first instance by an ALJ. 33 U.S.C. § 919(d). An ALJ's decision raising a substantial question of law or fact may then be appealed to the BRB, a quasi-judicial independent body within the Department of Labor. The three members of the BRB are appointed by the Secretary of Labor. *Id.* § 921(b)(1), (3). Board orders are reviewable in the Courts of Appeals under section 921(c).

the extent they cause disability and are work-related, constitute compensable injuries within the meaning of the Act. App. 40.

■ We see no reason to disturb this conclusion. The Board was bound to adhere to the ALJ's determination that Mr. Crum's angina was causally related to his employment at General Adjustment if that conclusion was supported by substantial evidence. *O'Keeffe, supra,* 380 U.S. at 362, 85 S.Ct. at 1014. Of that there can be no doubt, in view of the complete accord between both physicians that the stress and conditions of Mr. Crum's work precipitated and aggravated the pains, which in turn disabled him from working.

■ Further, as the Board explained, its conclusion that Mr. Crum's angina was compensable under the Act is fully consistent with prior precedent interpreting the meaning of "injury." *Crum, supra,* 12 B.R.B.S. (BNA) at 461–62. *See Gardner v. Bath Iron Works,* 11 B.R.B.S. (BNA) 556, 557 (1979) (pain resulting from varicose veins that prevented claimant from standing for long periods of time was a compensable injury under the LHWCA), *aff'd, Gardner v. Director, Office of Workers' Compensation Programs,* 640 F.2d 1385, 1389 (1st Cir.1981); *Furlong v. O'Hearne,* 144 F.Supp. 266, 270 (D.Md.1956), *aff'd,* 240 F.2d 958 (4th Cir.1957) (per curiam) (claimant had a compensable injury when the strain of heavy lifting caused back pain, despite the fact that he had a pre-existing condition of spina bifida); *cf. Hensley v. WMATA,* 655 F.2d 264, 268–69 (D.C.Cir. 1981), *cert. denied,* 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982) (aggravation of claimant's underlying psoriasis was compensable injury within meaning of Act).

General Adjustment, however, argues that this court's decision in *Groom v. Cardillo,* 119 F.2d 697 (D.C.Cir.1941), compels a contrary conclusion. Reading *Groom* to suggest that the underlying disease or condition must be causally related to the claimant's employment, General Adjustment argues that since Mr. Crum's heart disease was not caused by his employment, his

angina—a mere symptom of the underlying disease—is not compensable. *Groom,* however, in no way stands for the proposition advanced by General Adjustment. The court in *Groom* simply upheld a determination that the claimant's injury, a lung hemorrhage, was not causally related to his employment as a bank teller. *Groom* is thus clearly inapposite, since here the onset and intensity of angina has been directly causally linked to Mr. Crum's employment. *Id.* at 698–99. Moreover, this court has long recognized in workmen's compensation cases that the underlying disease need not have been caused by the worker's employment. *See Hensley, supra,* 655 F.2d at 268 (it is "indisputable" that an aggravation of a pre-existing condition may constitute a compensable injury). In sum, we find no error in the conclusion of both the ALJ and the Board that Mr. Crum's angina was a compensable injury within the scope of the Act.

**B**

General Adjustment next contends that the BRB erred in concluding that Mr. Crum's angina gave rise to a total, rather than partial, disability. General Adjustment advances two arguments in this respect. First, the employer contends that the evidence actually adduced does not, in fact, support the conclusion that claimant's angina was totally disabling. Second, General Adjustment argues that if Mr. Crum were awarded benefits for a total disability on account of his angina, the combination of those benefits with the previously awarded fifteen percent permanent disability benefits for his neck injury, *see* note 3, *supra,* would result in compensation for more than 100 percent disability. We reject each of these arguments.

The ALJ determined that Mr. Crum's angina did not constitute total disability. He based this conclusion primarily upon the opinion of General Adjustment's examining physician, Dr. Walsh, who testified that Mr. Crum could return to his job if working conditions were improved (1) by reducing stressfulness and (2) by Mr.

Crum's working under a different supervisor. The ALJ also noted that claimant's physician, Dr. Cioffi, essentially agreed with this conclusion by suggesting that Mr. Crum could do other work if only sedentary activity were involved and the job involved a less stressful environment. *Id.; see also* App. 40–41.

The Board disagreed with the ALJ's determination that Mr. Crum was only partially disabled, finding that the ALJ had applied the wrong legal standard in assessing the evidence. App. 4. Under well-established principles, the BRB explained that

> [i]n order to be found disabled, claimant must establish an inability to return to his usual employment. Once claimant has made this showing, the burden shifts to the employer to establish suitable alternate employment opportunities available to claimant considering his age, education and work experience.

App. 4 (citations omitted). The Board found that the employer had *completely* failed to present evidence of the availability of alternative work, despite the claimant's showing that he was unable to perform his usual work. The BRB therefore concluded that the ALJ's finding on this point was not supported by substantial evidence.

■ The Board's determination on this point in no wise departed from the well-established legal standards for evaluating the extent of a claimant's disability, nor from the statutory requirement that the ALJ's finding of partial disability must be upheld unless unsupported by substantial evidence. In the first instance, the LHWCA itself does not define "total" or "partial" disability. In determining the extent of disability, both the Board and the courts have therefore considered as relevant factors the claimant's age, physical condition, work experience, and availability of other work. *American Mutual Ins. Co. of Boston v. Jones*, 426 F.2d 1263, 1265–66 (D.C.

Cir.1970). These factors evidence the well-established principle that disability is an economic as well as medical concept. *Id.; New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1038 (5th Cir.1981). Moreover, the Board and the courts have utilized the burden-shifting device applied by the Board in this case as an aid to the evaluation of such evidence. *See New Orleans (Gulfwide) Stevedores, supra,* 661 F.2d at 1038; *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327, 1328–29 (9th Cir.1980); *Ridgely v. Ceres, Inc.*, 594 F.2d 1175, 1177–78 (8th Cir.1979); *Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs*, 592 F.2d 762, 765 (4th Cir. 1979); *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 935–36 (2d Cir.1976). As the court in *New Orleans Stevedores* explained, this burden-shifting device implements the LHWCA's statutory presumption[5] in favor of coverage. 661 F.2d at 1038. Once the claimant demonstrates inability to perform his or her usual job, a *prima facie* case of total disability is established, which the employer may then seek to rebut by establishing the availability of other jobs which the claimant could perform. *Id.*

■ Applying these principles to this case, the Board correctly rejected the ALJ's determination that Mr. Crum suffered only from a partial disability. The ALJ incorrectly relied upon the very medical evidence that gave rise to Mr. Crum's *prima facie* showing of total disability to show that he could perform alternative work. It was the employer, however, which bore the burden of producing *some* evidence of the availability of alternative work. In this case, the employer utterly failed to shoulder this burden; indeed, the evidence before the ALJ persuasively demonstrated that the employer was unwilling

---

5. The LHWCA contains a number of statutory presumptions. One is that "the cause comes within the provisions of this chapter." 33 U.S.C. § 920(a). In addition to these express presumptions, it is well established that the LHWCA is to be liberally construed in favor of injured employees. *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953); *Stevenson,* 688 F.2d at 98; *New Orleans Stevedores,* 661 F.2d at 1038.

to alter Mr. Crum's working conditions as suggested by both the employer's and Mr. Crum's physicians. The employer therefore failed, under well established principles, to rebut the *prima facie* presumption of total disability. Under these circumstances, the BRB correctly reversed the ALJ and determined that Mr. Crum suffered from total disability.

General Adjustment argues, secondly, that awarding Mr. Crum total disability would result in overcompensation, inasmuch as he was previously awarded fifteen percent partial permanent disability for his neck injury. As the Board noted, however, awarding benefits for a total disability in Mr. Crum's case will not result in overcompensation, since the award is to be adjusted so as to take into account the prior award of fifteen percent partial disability. App. 7–8. Under this court's decision in *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 91 (D.C.Cir.), *cert. denied*, 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980), the benefits for a total disability are calculated by evaluating the wage-earning capacity that remains *after* the partial permanent disability is accounted for. Accordingly, the Board did not err in awarding total disability on this ground.

### C

Finally, Mr. Crum contends that the Board erred in failing to award him *permanent* total disability benefits rather than temporary total benefits. He argues that the ALJ's determination—that he suffered from a permanent disability—was supported by substantial evidence, and that the Board therefore improperly reversed that conclusion. The ALJ reasoned that although Mr. Crum's condition had improved significantly since leaving his job, on the evidence presented, the disability was likely to be permanent. App. 41. We agree that the BRB erred in overturning this portion of the ALJ's decision.[6]

A disability is permanent if it "has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period." *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 654 (5th Cir.1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969); *Air America, Inc. v. Director, Office of Workers' Compensation Programs*, 597 F.2d 773, 781–82 (1st Cir.1979); *Newport News, supra*, 592 F.2d at 764. Substantial evidence supported the ALJ's conclusion that Mr. Crum's angina was permanent rather than temporary. This evidence included the physician's evaluations of Mr. Crum's condition, which, while improved, appeared to be of indefinite duration. In reversing the ALJ's determination, the Board failed to give that determination its statutorily required conclusiveness, and instead redetermined the facts as to Mr. Crum's likelihood of recovery by focusing on the abatement of his chest pains and the overall improvement in his health after he left General Adjustment's employ. But the BRB was not entitled to review this matter *de novo;* rather, the Board was bound by the ALJ's determination if supported by substantial evidence. *See Bath Iron Works Corp. v. White*, 584 F.2d 569, 574 (1st Cir.1978) (asbestosis victim not required to return to work to show permanence of injury when symptoms were alleviated at home).

We therefore reverse the Board's conclusion that Mr. Crum's angina was merely temporary, and reinstate the ALJ's determination that the injury was permanent because it was amply supported by substantial evidence.

### III

For the foregoing reasons, the decision of the Board is affirmed in part and reversed in part and remanded for the deter-

6. The BRB was divided on this issue. One member, Judge Miller, dissented from the Board's decision in this regard, reasoning that as long as Mr. Crum's chest pains continued to prevent him from returning to work, he was permanently disabled. App. 21.

mination of an appropriate award, in accordance with this opinion.

*It is so ordered.*