Bruce V. McBRIDE, Petitioner,

v.

EASTMAN KODAK COMPANY, and Director, Office of Workers' Compensation Programs, U.S. Department of Labor, Respondents.

No. 86–1606.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 16, 1987.

Decided Feb. 17, 1988.

Issued for Publication April 26, 1988.

Joseph W. Pitterich, Bethesda, Md., for petitioner.

Donald P. Maiberger, Rockville, Md., for respondent Eastman Kodak Co.

Cornelius S. Donoghue, Jr., Office of Sol., Dept. of Labor, Washington, D.C., entered an appearance for respondent Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before MIKVA and D.H. GINSBURG, Circuit Judges, and MARKEY,* Chief Judge, United States

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In May 1978, petitioner Bruce McBride suffered a herniated disc while working as a sales representative for respondent Eastman Kodak Co. McBride underwent an operation and then recuperated for several months. As the administrative law judge ("ALJ") subsequently found, McBride continued to suffer "some physical limitations and pain," Joint Appendix ("J.A.") at 13a, although the severity of either of these symptoms is disputed.

In early 1979, McBride returned part-time to a desk job at Kodak's Washington, D.C. office. However, this position was not permanently available, and Kodak requested McBride to enroll in a retraining program for three months at the company's Rochester headquarters. At no time was McBride offered his old job in Washington. Kodak maintained, instead, that a sedentary job would be available in Rochester upon successful completion of the retraining. McBride did not believe he was physically able to complete the retraining program or to work full-time thereafter, and he also did not want to relocate to Rochester. After discussions with Kodak, and unsuccessful requests by McBride for continued employment in Washington, McBride decided to leave Kodak. Thereafter, McBride worked part-time at Gordon's Studio, a local camera store, for several months but ultimately quit when the owner insisted that he switch from an hourly wage to a commission arrangement.

As a result of his injury, McBride filed for permanent disability benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA). 33 U.S.C. §§ 901 et seq. (1982). At the time of McBride's injury, pursuant to 36 D.C.Code §§ 501 et seq. (1973) (repealed 1980), the LHWCA applied to employees in the District of Columbia. A hearing was held on this claim before the ALJ in February 1983. The ALJ's opinion, issued in July 1983, denied McBride's claim on the ground that McBride was physically able to perform his old job as a technical sales representative. McBride appealed this decision to the Department of Labor's Benefits Review Board ("the Board"), which affirmed the ALJ's ruling. McBride then filed a petition for review of the Board's decision with this court. We find that the ALJ applied an incorrect legal standard in denying McBride's claim and that the Board failed to correct this error in its review. We therefore reverse the Board's decision and remand the case for further proceedings.

A worker's disability—whether total or partial—is defined in the LHWCA as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10) (Supp. III 1985). This Circuit has recognized "the well-established principle that disability is an economic as well as medical concept." *Crum v. General Adjustment Bureau*, 738 F.2d 474, 479 (D.C.Cir.1984). Thus, a determination of wage-earning capacity must not rest solely on an evaluation of the work that an injured employee physically *can* perform; "there must be taken into consideration ... the availability of that type of work which he can do." *American Mutual Insurance Co. v. Jones*, 426 F.2d 1263, 1265 (D.C.Cir.1970) (footnote omitted). *See also Newport News Shipbuilding and Dry Dock Co. v. Director, OWCP*, 592 F.2d 762, 765 (4th Cir.1979).

In addition to underscoring the economic nature of "disability," the *Crum* court affirmed the use of a "burden-shifting device" in determining whether there is compensable disability. The court endorsed this description (formulated by the Benefits Review Board) of the parties' burdens: "In order to be found disabled, claimant must establish an inability to return to his usual employment. Once claimant has made this showing, the burden shifts to the employer to establish suitable alternate employment opportunities available to claimant considering his age, education and work experience." 738 F.2d at 479.

In the present case, the ALJ held that McBride was capable of returning to his original employment, and thus the burden never shifted to Kodak to demonstrate the availability of alternative jobs that were comparable. The ALJ erred, however, in his initial finding, for the determination that McBride could perform his original job was based exclusively on medical, rather than economic, facts. The judge held that McBride could carry out his duties as a sales representative but neglected the other crucial issue—whether McBride's former job was still open to him. The parties in this case agree that McBride's prior position at Kodak is no longer available.

The final paragraphs of the ALJ's opinion reveal the error in his approach. Having found that McBride could physically perform his duties at the camera shop as well as at the temporary desk job in Kodak's Washington, D.C. office, the ALJ observed that

> [t]he only remaining distinction between these jobs and Claimant's former full-time [technical sales representative] duties is frequent and long travel by automobile. Medical evidence ... persuades me that Claimant could engage in such car travel, despite Claimant's untested assertions to the contrary. Lifting, pushing and pulling are not major aspects of the job and could be accomplished, if need be, with the assistance of others.
>
> Even with restrictions, then, ... Claimant was capable of resuming his regular full-time duties as a [technical sales representative].

J.A. at 13a–14a. This exclusively physical view of disability defeats the purpose of the LHWCA. The statute's equation of disability with "wage-earning capacity" reflects a concern for the economic consequence of job-related injuries, which the ALJ effectively disregarded.

On appeal, the Benefits Review Board perpetuated the ALJ's error. Responding to McBride's argument that he did not have the option of returning to his former job, the Board simply noted the ALJ's finding that McBride was "able to perform" his former duties and then flatly asserted that "[s]ubstantial evidence supports the administrative law judge's findings." J.A. at 3a. This conclusion may be interpreted in two ways, but in either case the Board was incorrect.

First, it is conceivable that the Board simply misread the ALJ's opinion. When the Board concluded that McBride had not met his "burden of establishing that [he] cannot return to his usual employment," the Board may have meant that McBride had failed to demonstrate that the unavailability of his former job was *related* to his injury. There is no basis, however, for reading the ALJ's opinion in this manner, for the judge simply did not address the availability of McBride's former job.

Even if the Board fairly interpreted the ALJ's decision as holding that McBride failed to show that the unavailability of his job was *due* to his injury, the record in this case would not sustain such a holding. The evidence presented to the ALJ showed that, prior to McBride's injury, Kodak anticipated that McBride would undergo retraining in Rochester but would then resume his sales work in the Washington D.C. region. J.A. at 131a. After the injury, however, Kodak assumed that "Bruce would be retrained and would be assigned to a [different] task that he could accommodate with his medical situation." J.A. at 132a. Indeed, following the injury, Kodak's managers told McBride that they "had no positions for [him] in the Washington area." J.A. at 162a.

Although circumstantial, this evidence clearly indicates that McBride's injury *was* the precipitating factor that rendered his former job unavailable. Kodak does not contest this point, and the ALJ's opinion is not to the contrary. Since "doubtful questions, including factual ones ..., must be resolved in favor of claimants," *Hensley v. Washington Metro. Area Transit Authority*, 655 F.2d 264, 267 (D.C.Cir.1981), *cert. denied*, 456 U.S. 904, 102 S.Ct. 1749, 72 L.Ed.2d 160 (1982), we find that McBride fulfilled his burden of demonstrating that his injury resulted in "an inability to return

to his usual employment." *Crum,* 738 F.2d at 479.

Alternatively, the Board may have affirmed the ALJ's decision because it failed to recognize that the ALJ's physical, rather than economic, definition of "disability" constituted an incorrect legal standard. In other words, like the ALJ, the Board may have concluded that as long as McBride was able to perform his former duties it did not matter whether that type of employment was still available to him. If this is the rationale for the Board's decision, it must be reversed for the same reason that the ALJ's own opinion cannot stand. We therefore reverse the decision below and remand the case for further consideration by the ALJ.

■ On remand, the judge will have to assess whether alternative jobs available to McBride are comparable in pay to his former position and, if not, to what extent his wage-earning capacity has diminished. This will determine the extent, if any, of disability. Under the LHWCA, compensation for nonscheduled injuries "shall be [two thirds] of the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of partial disability." 33 U.S.C. § 908(c)(21) (Supp. III 1985). As Kodak itself acknowledges, the ALJ should "require[ ] a showing of alternate employment within the geographic area where the claimant resides and [should] take [ ] into consideration claimant's age, education and work experience." Respondent's brief at 13. Kodak also acknowledges that it bears the burden of proof in this inquiry. *Id.* at 12.

Kodak urges this court to find that it has already satisfied this burden because its rehabilitation specialist located "three suitable alternate employment positions ... within [McBride's] geographic area." Respondent's brief at 13. However, the record does not permit us to make such a finding. For example, the first of these three positions—a possible telephone sales job at Industrial Photographic Products— would have paid roughly half the amount of McBride's former salary, J.A. at 342a, and in fact did not materialize. *Id.* at 343a.

The second job—the position at Gordon's camera shop that McBride actually occupied in a part-time capacity after leaving Kodak—paid less than half of his former salary, even as a full-time position at an hourly wage. Compare J.A. at 8a and 268a. Nor was there any evidence that, under the subsequent arrangement for commissions based on "one or two percent of sales," J.A. at 69a, the job at Gordon's would have become more lucrative. As for the third position, a job with unknown responsibilities at Fuller and d'Albert's, Kodak does not appear to have offered any evidence regarding its level of compensation.

Accordingly, this court cannot hold that these three jobs are fully comparable to McBride's former employment with Kodak. However, we leave for the ALJ's final determination the extent to which any of the employment prospects identified by Kodak's rehabilitation specialist constitute suitable alternative employment for McBride. The decision by the Board is hereby reversed with instructions that the ALJ's opinion be vacated and that the case be remanded for further proceedings consistent with this opinion.

*It is so ordered.*