526 So.2d 1068 (1988)
Carl V. SUMNER, Appellant,
v.
GARDINIER, INC. and Wausau Insurance Companies, Appellees.
No. 87-1553.
District Court of Appeal of Florida, First District.
June 22, 1988.
*1069 Harold E. Regan, Tallahassee, for appellant.
Kathleen R. Hudson, St. Petersburg, for appellees.
SHIVERS, Judge.
In this workers' compensation case, claimant appeals from an order of the Deputy Commissioner (DC) denying his claim for benefits. Upon review of the record below, we reverse that portion of the DC's order denying claimant's request for further urological consultation and affirm the order as to the remaining points on appeal.
On November 29, 1982, claimant, a 50-year-old male, suffered a compensable injury when his pelvic area was crushed and multiple ribs were fractured by a large piece of industrial equipment. Subsequent to his injury, claimant complained of painful glans penis with no or incomplete erection and blood in the ejaculate. A medical report written in February of 1983, less than three months after claimant's accident, states that "[claimant] also noted since he has gone home that there is some problem with erections that are not as satisfactory as they were prior to his accident, not as firm or as erect and he has pain in a roughly circular fashion around his pubic area." A medical report dated March 4, 1983, contains the following statement:
[Claimant] also has noticed some blood in the ejaculate, on one occasion that he's had one since his accident. He says that when he gets sexually stimulated he has pain deep in his pelvis, and in his supra-pubic region. He also is having some impotence.
Another medical report dated March 21, 1983, contains the following statement:
This patient states that he was run over at work, 11/30/82... . Since that time, he has had no erection. He has a rather constant sensation of pain and numbness in the glans penis and has had slow ejaculations with hematospermia on two occasions. Both of these without erection.
Claimant testified that prior to his accident he had a very active sex life, without pain or impotency problems. However, claimant testified that since the accident he has had so much pain when an erection begins that "it kills the desire flat."
In December of 1985, claimant went on his own to see Dr. Hodges, a urologist, for complaints of impotency. After examination and treatment with testosterone, Dr. Hodges found that although he did not know the etiology of claimant's sexual dysfunction, claimant's diabetes was "a very likely cause of it." However, claimant testified that he was a diabetic for several years before the 1982 accident but that his *1070 diabetes was under control and did not affect his sex life before the accident. Dr. Hodges also testified that it would be difficult for him to state that pelvic trauma caused claimant's impotency where claimant had no obvious neurological problems and no obvious vascular insufficiency to his legs. In a letter dated April 10, 1987, Dr. Hodges wrote:
[Claimant] is diabetic and his complaints are quite typical of many diabetics his age with complaints of some degree of sexual dysfunction. I have no idea what his sexual function was prior to the injury and have no way of stating with any certainty whether the injury is a significant factor in these present complaints or not.
In his order, the DC states:
I accept the opinion of Dr. Hodges that the claimant's urological and/or sexual dysfunction problems are not related to the industrial injury. .. . I accept the opinion of Dr. Hodges that the most likely cause of the claimant's urological complaints is his unrelated diabetic condition. The request for a further urological consultation is denied as being not causally related to the industrial injury.
The DC based his denial of a further urological consultation on his finding that claimant's sexual dysfunction was not related to the industrial injury. However, Dr. Hodges never found that claimant's sexual dysfunction was not related to his industrial accident. Rather, Dr. Hodges wrote in his letter dated April 10, 1987, that he would have "no way of stating with any certainty whether the [compensable] injury is a significant factor in these present [sexual dysfunction] complaints or not."
Claimant asserts that a full urological work-up is needed to determine whether his sexual dysfunction is related to the accident of November, 1982. "Whenever the purpose of the diagnostic test is to determine the cause of claimant's symptoms, which symptoms may be related to a compensable accident, the cost of the diagnostic test is compensable." Sanchez v. Security Sales Co., 522 So.2d 435, 436 (Fla. 1st DCA 1988) (quoting Nealy v. City of West Palm Beach, 491 So.2d 585, 586 (Fla. 1st DCA 1986)). In the case of Copeland Steel Erectors v. Miles, 483 So.2d 107 (Fla. 1st DCA 1986), this court held that a claimant who injured his lower back in a compensable accident and subsequently developed a thyroid nodule was entitled to diagnostic evaluation by an endocrinologist to determine whether a causal relationship existed between the thyroid nodule and the compensable injury. In the case of Abbott v. Price Plumbing, Inc., 500 So.2d 698, 699 (Fla. 1st DCA 1987), this court held that where "tests are intended to better ascertain the cause of claimant's symptoms, and such symptoms may be related to treatment for a compensable injury, claimant should have been awarded the diagnostic testing claimed."
The correctness of an order refusing a medical evaluation "must be tested by whether the claimant adequately demonstrated that such ... benefits were reasonably required by the `... nature of the injury... .'" Smith v. James Pirtle Construction Co., 405 So.2d 290, 291 (Fla. 1st DCA 1981) (quoting Bryant v. Elberta Crate & Box Co., 156 So.2d 844, 845 (Fla. 1963)). In the instant case, the evidence indicates that claimant's sexual dysfunctions began after his injury in November of 1982. Furthermore, although Dr. Hodges found that claimant's diabetes was the most likely cause of claimant's sexual dysfunction, Dr. Hodges never explicitly stated that claimant's sexual dysfunction was causally related to claimant's diabetes. In fact, Dr. Hodges stated that because he had no access to the medical records regarding claimant's accident in 1982, he could not state with any certainty whether the compensable injury was a significant factor in claimant's sexual dysfunction. The DC's denial of a further urological consultation was based on a finding that claimant's sexual problems were not related to the industrial injury. The DC erred because the factual findings which form the basis of the order are unsupported by competent substantial evidence.
*1071 Because no competent substantial evidence supports the DC's finding, and because we find that claimant adequately demonstrated his need for further urological evaluation, the DC's order denying further urological evaluation is reversed and the case is remanded for proceedings consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
MILLS and WIGGINTON, JJ., concur.