556 So.2d 1195 (1990)
Bradford A. PRINCE, Appellant,
v.
PRINCE INSURANCE SERVICES and Lumbermans Mutual Insurance, Appellees.
No. 89-1214.
District Court of Appeal of Florida, First District.
February 13, 1990.
Michael B. Wingo of Simmermon & Morgan, P.A., Daytona Beach, for appellant.
P. Elizabeth Rice of Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, for appellees.
JOANOS, Judge.
Claimant in this workers' compensation case appeals the denial of his claim for payment of certain medical bills. We reverse.
On August 21, 1984, claimant suffered a compensable low-back injury, for which continuing treatment was provided  most notably in the form of physical therapy designed to increase strength in claimant's lower back and lower extremities. In May 1988, the employer/carrier controverted payment of bills rendered by Drs. Morgan and Hiatt and West Volusia Memorial Hospital, for medical tests performed at the direction of Dr. Fulton, claimant's authorized treating orthopedic surgeon.
The record reflects that despite a program of rehabilitative therapy, in February 1987 claimant returned to Dr. Fulton with an exacerbation of his low back pain. At that time, Dr. Fulton found evidence of sacralization of the L-5 segment and the thoracic spine, degenerative disc disease, and cervical spondylosis or degenerative arthritis. Dr. Fulton found claimant's low back and neck problems were related to or aggravated by his industrial accident, but considered that the problems in the thoracic region were unrelated.
In March 1988, Dr. Fulton reviewed x-rays of claimant's spine which demonstrated degenerative disc disease at the C5-6 and 6-7 level, and calcification in the abdominal aorta. Dr. Fulton referred claimant to West Volusia Memorial Hospital for ultrasound studies of the abdominal aorta. The doctor explained that abdominal aortic aneurysms often give symptoms of back *1196 pain, and he wanted "to make sure that it wasn't a cause of his [claimant's] back symptoms." Dr. Fulton further stated that he needed to know the status of the abdominal aorta to make a decision whether further exercise rehabilitation could be safely provided, and that such a test was necessary in his determination of further treatment for claimant. During cross examination of Dr. Fulton, the following questions were asked and answered:
Okay. Doctor, as far as the sonogram you recommended, when you recommended that test you didn't feel that the aortic aneurysm was related to his industrial accident, did you?
A. No, ma'am.
Q. And wouldn't you just consider such a referral good medical practice?
A. Yes.
On March 31, 1989, the judge of compensation claims entered an order finding, among other things, that 
the employer/carrier should not be held responsible for the medical bills from West Volusia Memorial Hospital and from Drs. Morgan and Hiatt. These bills were incurred as a result of a sonogram which had been recommended by Dr. Fulton because he suspected the claimant may have an aortic aneurysm. Dr. Fulton testified that at the time he recommended this test, he did not feel the condition was related to his industrial accident, but rather felt that such a recommendation was good medical practice.
The principle is well settled that 
[w]henever the purpose of the diagnostic test is to determine the cause of a claimant's symptoms, which symptoms may be related to a compensable accident, the cost of the diagnostic test is compensable. (citation omitted) This is true even though later it should be determined that the claimant suffered from both compensable and noncompensable conditions.
Nealy v. City of West Palm Beach, 491 So.2d 585, 586 (Fla. 1st DCA 1986). See also Perry v. Ridgecrest International, 548 So.2d 826 (Fla. 1st DCA 1989); Green Chromalloy-Turbocumbustor, 540 So.2d 874, 876 (Fla. 1st DCA 1989); Sumner v. Gardinier, Inc., 526 So.2d 1068, 1070 (Fla. 1st DCA 1988); Sanchez v. Security Sales Co., 522 So.2d 435, 436 (Fla. 1st DCA 1988). To restate it, compensability of a diagnostic test does not depend upon test results which show a causal relationship between claimant's symptoms and the compensable injury. Rather, compensability is predicated upon the purpose or reason for the test, i.e., whether the test is necessary to determine the precise causal etiology of claimant's symptoms. Abbott v. Price Plumbing, Inc., 500 So.2d 698 (Fla. 1st DCA 1987). See also Boykin v. American Marine Products, Inc., 395 So.2d 1163 (Fla. 1st DCA 1981); Barris v. Toppers of Florida, Inc., 382 So.2d 441, 442 (Fla. 1st DCA 1980). Diagnostic testing which is recommended by an authorized physician is itself implicitly authorized. Green v. Chromalloy-Turbocumbustor, 540 So.2d at 876; Jones v. Plantation Foods, 388 So.2d 590, 591 (Fla. 1st DCA 1980).
The record in this case reflects that the contested diagnostic test was requested by an authorized treating physician. The record further reflects, as the judge found, that when Dr. Fulton recommended the sonogram, he did not feel that the suspected abdominal aortic aneurysm was related to the industrial accident. However, the record is clear that Dr. Fulton felt the test was necessary to determine the proper manner of treatment of claimant's compensable back injury. In other words, the diagnostic testing in this case was intended to reveal whether claimant's continuing back pain was attributable in part to an abdominal aneurysm, or whether it resulted solely from the compensable back injury. Dr. Fulton's testimony indicates that proof of the existence of the suspected aneurysm would alter the treatment prescribed for the back injury.
Thus, the circumstances of this case place the diagnostic testing within the frame of compensability contemplated in Abbott v. Price Plumbing, Inc. and Sumner v. Gardinier, Inc. That is, the recommended sonogram was "intended to better ascertain the cause of claimant's symptoms, and such symptoms may be related to treatment for a compensable injury." Abbott, 500 So.2d at 699; Sumner, 526 *1197 So.2d at 1070. By the same token, the need for diagnostic testing in this case appears to be "medically necessary" as that term is defined in section 440.13(1)(c), Florida Statutes (1987), which states in part:
"Medically necessary" means any service or supply used to identify or treat an illness or injury which is appropriate to the patient's diagnosis, ... (Emphasis supplied).
Since the diagnostic test recommended by Dr. Fulton was designed to reveal the precise causal etiology of claimant's symptoms so that an appropriate treatment decision could be made, the claimant should have been awarded payment of the bills incurred for the diagnostic testing. Therefore, we reverse that portion of the compensation order denying payment of the medical bills from Drs. Morgan and Hiatt and West Volusia Memorial Hospital, and remand for amendment of the order to reflect that the employer/carrier should be responsible for payment of the bills incurred for the ultrasound study ordered by Dr. Fulton.
WENTWORTH and THOMPSON, JJ., concur.