Harry B. STEWART, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

District of Columbia Realty and Devel-
opment Corp. & Liberty Mutual In-
surance Company, Intervenors.

No. 90-1500.

District of Columbia Court of Appeals.

Argued March 11, 1992.
Decided April 17, 1992.

Joseph A. Blaszkow, for petitioner.

Charles L. Reischel, Deputy Corp. Coun-
sel, filed a statement in lieu of brief for
respondent.

Philip R. Murray, for intervenors.

Before SCHWELB, FARRELL and
KING, Associate Judges.

SCHWELB, Associate Judge:

Harry B. Stewart has requested this
court to review a ruling by a Hearing and
Appeals Examiner of the District of Colum-
bia Department of Employment Services
(DOES or the agency) denying him benefits
pursuant to the District of Columbia Work-
ers Compensation Act of 1979 (the Act),
D.C.Code § 36–301 *et seq.* (1988). He con-
tends that the examiner's decision is not
supported by substantial evidence and that
it rests on incorrect legal principles. We
affirm.

I

Most of the relevant facts are undisput-
ed. On August 1, 1984, while employed by
D.C. Realty and Development Corporation
(the employer), Stewart, then approximate-
ly fifty-six years old, fell from a scaffold.
He suffered six broken ribs on the right
side of his chest, as well as fractures of his
skull and left wrist and a collapsed lung.
Stewart was disabled by the accident, and
he has since been in almost continual pain
on the right side of his chest. From the
time of the accident to the present, Stewart
has sought and received medical treat-

ment.[1] The employer does not dispute the compensability of the treatment for Stewart's initial injuries.

In July 1987, almost three years after his fall from the scaffold, Stewart experienced an episode of sharp epigastric chest pain, accompanied by shortness of breath. Although he had suffered some epigastric discomfort previously, the new pain was of a different character. By November 1987, Stewart had suffered two additional attacks of this type.

Following the November 1987 episode, Stewart consulted his physician, Dr. Robert Guedenet. Because Stewart's family history and medical history indicated that he was at high risk for cardiac problems,[2] Dr. Guedenet referred him to George Washington University Medical Center (GWUMC) for a cardiac catheterization. The purpose of this procedure was to determine whether Stewart's new pains were caused by severe coronary artery disease.

The tests at GWU, which were conducted under the supervision of Harold Ross, M.D., revealed only minor irregularities of the coronary arteries. Dr. Ross recommended "medical management of what at present is mild coronary artery disease."

Following his stay at GWUMC, Stewart requested compensation for the treatment expenses from his employer pursuant to the Act. The employer declined to pay, contending that the treatment was not job-related and that it had not been caused by Stewart's 1984 injury. Stewart filed a timely claim with DOES, asking that the employer be ordered to pay his medical expenses, as well as interest and penalties. On October 10, 1989, Stewart's claim was heard by a DOES appeals and hearing examiner.

Stewart was the only witness at the hearing. In contending that the treatment was compensable, Stewart also relied on several letters or reports from his treating physician, James Hopkins, M.D., and on the pertinent records from GWUMC. In opposing Stewart's claim, the employer relied largely on a report from Michael Goldman, M.D., who had examined Stewart on behalf of the employer's insurance carrier.

After considering the evidence, the hearing examiner issued a written decision. The examiner found that the expenses incurred by Stewart in connection with his treatment at GWUMC were not causally related to his 1984 accident. Stewart sought review by the Director of the agency, who took no formal action, thus permitting the examiner's decision to become final. *See* D.C.Code § 36–322(b)(2) (1988). Stewart then filed a timely petition for review by this court.

## II

Stewart contends that the hearing examiner's findings are not supported by substantial evidence and that the hearing examiner misapplied the law. Where an administrative decision is attacked on these grounds, our cases require that

> (1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings.

*George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 563, 564 (D.C.1985); *see* D.C.Code § 1–1509(e) (1987). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) (citations omitted); *Washington Post Co. v. District Unemployment Compensation Bd.,* 377 A.2d 436, 439 (D.C.1977).

In order to recover his expenses at GWUMC, Stewart must show by a preponderance of the evidence that these expenses were caused by his work-related

---

1. Stewart apparently advised Michael Goldman, M.D., the physician who examined him on behalf of the employer's insurer, that he had seen 65 physicians since his accident in 1984.

2. Stewart is a heavy smoker, drinks alcohol, and eats red meat. His father and two brothers, one of whom was Stewart's twin, have died as a result of cardiac problems.

injury. *See* D.C.Code § 36–301(12) (1988) (for purposes of the Act, the term injury includes such "occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury"). "[T]he essence of the problem is causation." ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 38.83, at 7–213 to 7–313 (1991). Where causation is not shown, the expenses are not compensable. *Id.,* § 13.11, at 3–518 n. 9 and authorities cited. "[T]here must be a direct causal connection between the employment and the injury, whether it be the result of accident or disease." *Groom v. Cardillo,* 73 App.D.C. 358, 360, 119 F.2d 697, 699 (1941). We are satisfied that there was substantial evidence in the record to support the examiner's finding that the requisite causal nexus has not been established.

■ After examining Stewart on March 7, 1990, on behalf of the employer's insurer, Dr. Goldman concluded in a letter to the insurer's claims agent that Stewart's treatment at GWUMC was not causally related to the original accident. Dr. Goldman found it to be "of import" that Stewart's episode of chest pain occurred two weeks after one of his brothers died of heart disease. He also noted the history of heart disease in the patient's family and the risk occasioned by his smoking and drinking. Dr. Goldman's "initial impression" was that

> given [Stewart's] multiple cardiac risk factors and chest pain episode in 1987, evaluation would have been indicated whether or not he had a pre-existent medical condition. I do not feel his pre-existent chest complaints were particularly relevant to the decision to proceed with cardiac evaluation.[3]

The hearing examiner made no reference to the tentative character of Dr. Goldman's conclusion, but described his analysis as "well-reasoned and cogent." Although the record would certainly have been more complete if it had contained Dr. Goldman's final assessment rather than only a preliminary one, we cannot disagree with the hearing examiner's assessment of Dr. Goldman's reasoning.

Moreover, the GWUMC records are replete with allusions to the fact that the pain suffered by Stewart in 1987 during the episodes of which he then complained was different in kind from that which had preceded it. The report of Dr. Ross further discloses that the purpose of the procedure was to rule out major coronary disease. Given Stewart's family history and "high risk" personal habits, it was reasonable for the hearing examiner to conclude, on the basis of the employer's presentation and the hospital records, that the work done at GWUMC would have been called for even if Stewart had not suffered his work-related accident in 1984.

Stewart relies on a letter written on October 10, 1989, by Dr. Hopkins, one of Stewart's treating physicians, to a second doctor. It was Dr. Hopkins' opinion, as stated in that letter, that "this coronary catheterization study, as well as other studies, would not have been necessary unless the patient had [suffered] the accident of 8/01/84." Although Dr. Hopkins wrote this letter two years after Stewart's hospitalization, however, he acknowledged that he "[did] not know the results of the coronary catheterization and consultation at George Washington Hospital." Moreover, Dr. Hopkins conceded that the physicians were "totally justified in making every effort to determine whether or not the pain could be due to the coronary artery disease." Given that concession, it is difficult to understand why this justification would not have been present even if there had been no accident in 1984.

Aside from the discovery at GWUMC that Stewart was suffering from minor rather than major coronary artery disease, Dr. Hopkins' comment as quoted above is

---

3. Dr. Goldman described this as his "initial" impression because, as he explained immediately after the quoted passage, he was still awaiting receipt of Stewart's past medical records. Dr. Goldman added that he would "review these [records] and forward my final conclusions as soon as these records become available." Unfortunately, no further report from Dr. Goldman is in the record.

the sole support in the record for the proposition that the catheterization would not have been necessary but for Stewart's accident.[4] The evidence of causation is therefore conjectural at best.

■ Although the substantial evidence rule restricts the scope of our review, the weight which we must accord to the examiner's assessment of the comparative persuasiveness of Dr. Goldman and Dr. Hopkins is reduced in some measure by the failure of the parties to present the live testimony of the two physicians. In light of that failure, the hearing examiner was not in a position to assess either man's demeanor, and the reasons for deference were less compelling than in cases in which physicians have testified. *See Hyman, supra*, 498 A.2d at 566; *Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 107 (D.C.1988); and *compare In re Shillaire*, 549 A.2d 336, 341 (D.C. 1988) (*Shillaire I*) *with In re Shillaire*, 597 A.2d 913, 916 (D.C.1991) (*Shillaire II*).[5] Moreover, some courts have suggested, and we agree, that in assessing the weight of competing medical testimony in worker compensation cases, attending physicians are ordinarily preferred as witnesses to those doctors who have been retained to examine the claimant solely for purposes of litigation. *See generally King v. W.C.A.B. (Wendell H. Stone Co.)*, 132 Pa.Cmwlth.

292, 572 A.2d 845, 846 (1990), and authorities there cited.

Notwithstanding these considerations, however, we are in no position to second-guess the hearing examiner's conclusion that Stewart failed to prove that the claimed expenses arose out of his employment. As the court explained in *King*, a case factually similar to the present one, a previously injured claimant's need for new diagnostic procedures does not render the employer liable for the cost of those procedures simply because the claimant suffered a prior work-related injury. To use the court's example:

> Assume for the moment that a claimant has pre-existing coronary artery disease but, unlike King, was disabled because of a broken leg which refused to heal. No one could argue persuasively that the employer there should be responsible for treatment of the heart condition. While the testing was necessary, we believe that the employer in a workmen's compensation case is responsible for paying only those expenses related to the work-related disability. We know of no workmen's compensation cases where an employer is responsible for paying any expenses not related to the accident or injury at work.

572 A.2d at 847.[6]

Stewart maintains, in the alternative, that the hearing examiner made a number

---

4. Dr. Hopkins concluded his letter by expressing his "personal opinion" that the GWUMC hospital fee "should be covered by Liberty Mutual Insurance Company as part of the Workmen's Compensation coverage."

5. As a most distinguished court (Judge Jerome Frank, writing for himself and for Judges Learned Hand and Augustus Hand), explained in *Broadcast Music, Inc. v. Havana Madrid Restaurant Corp.*, 175 F.2d 77, 80 (2d Cir.1951), quoting ULMAN, THE JUDGE TAKES THE STAND 267 (1933),

> [a] stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.

6. Stewart relies on several Florida decisions holding that diagnostic tests conducted for the

purpose of determining whether a condition is work-related are compensable even if it ultimately appears that no causal relation exists. *See, e.g. Prince v. Prince Ins. Serv.*, 556 So.2d 1195, 1196 (Fla.App. 1st Dist.1990), and authorities there cited. There is no evidence in the present case that the tests in question were conducted in order to assess work-relatedness. Moreover, the courts in *Prince* and earlier cases did not address the question whether the diagnostic tests would.have been necessary even if the claimant had not suffered a compensable injury. If these decisions are viewed as standing for the proposition that the employer must compensate the claimant for a diagnosis that would have been required even if there had been no work-related condition—and no court, to our knowledge, has explicitly adopted such a notion—we are compelled to disagree. As the court correctly pointed out in *King, supra*, there is no reasonable basis for requiring an employer to compensate an employee for a condition unrelated to the employment.

of serious factual errors, and that this court should remand the case to him so that he might correct his mistakes and then reconsider the question of compensability. It does appear that the some of the examiner's findings were less than completely accurate or balanced.[7] We are satisfied, however, that the hearing examiner in fact would have reached (and properly could have reached) the same ultimate conclusion in the absence of these and other alleged misapprehensions. Stewart's showing of any causal nexus between his employment and the expenses for which he sought compensation was simply far too flimsy. Accordingly, a remand would serve no useful purpose. *See In re Melton,* 597 A.2d 892, 908 (D.C.1991) (en banc).

Accordingly, the decision of the Department of Employment Services is hereby

*Affirmed.*

---

7. For example, the hearing examiner referred in his decision to a single episode of epigastric pain in November 1987; in fact, the patient suffered two earlier attacks, the first having occurred in July 1987. The hearing examiner also characterized Dr. Hopkins' conclusion in Stewart's favor as "tentative," while ignoring Dr. Goldman's description of his own conclusions as merely preliminary.