Bari MUHAMMAD, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

and

Verizon Communications, formerly d/b/a/ Bell Atlantic, Washington, D.C., Inc., Intervenor.

No. 00–AA–336.

District of Columbia Court of Appeals.

Argued June 7, 2001.

Decided June 28, 2001.

Bari Muhammad, pro se.

Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent, District of Columbia Department of Employment Services.

Donald P. Maiberger, Rockville, MD, for intervenor, Verizon Communications.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

Bari Muhammad has asked this court to review a decision by the Director of the District of Columbia Department of Employment Services (DOES or the agency) denying him a "schedule award" [1] for a

---

**1.** A "schedule award" pursuant to D.C.Code § 36–308(3) (1997) is an award designed to compensate an employee who has suffered a permanent partial disability, that is, a disability that does not result in the loss of two hands, arms, feet, legs, or eyes and that does not prevent the employee from "earn[ing] any wages in the same or other employment." D.C.Code § 36–308(1) & (3). The statute enumerates a list of injuries, e.g., the loss of an

25% permanent disability of the "right upper extremity"[2] pursuant to D.C.Code § 36–308(3) (1997). Mr. Muhammad contends that the Director erroneously affirmed a compensation order previously issued by a DOES hearing examiner. We agree with Mr. Muhammad that certain findings by the hearing examiner that led to the denial of the schedule award were not supported by substantial evidence on the record as a whole. Accordingly, we vacate the agency's decision to the extent that it denies Mr. Muhammad a schedule award, and we remand the case to the agency for further proceedings.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Mr. Muhammad has been employed by Verizon Communications and its predecessors, Bell Atlantic and C & P Telephone Company, since 1982. After having served as a security guard for a short period, Mr. Muhammad worked as a telephone service technician from 1982 until 1992. While employed in that capacity, he sustained two job-related injuries to his lower back, one in 1989 and one in 1990. As a result of these injuries, Mr. Muhammad was placed on permanent medical restrictions that made it impossible for him to continue to work as a service technician.[3] In 1992, he was reassigned to a position as a computer/keyboard operator. In that capacity, Mr. Muhammad spends a large portion of his workday responding, through the use of a computer keyboard and mouse, to telephonic complaints from customers.

In the early 1990s, Mr. Muhammad began experiencing problems in both hands, including stiffness, numbness, tingling, reduced coordination, and dull, shooting pain. He did not seek treatment for this condition until April 1996, when his condition deteriorated, especially in his right hand. On April 12, 1996, Mr. Muhammad was diagnosed with bilateral carpal tunnel syndrome. Later in the same month, he informed his immediate supervisor of this diagnosis, and he explained its impact on his ability to perform his job. On May 28, 1996, Mr. Muhammad filed an Employee's Claim Application pursuant to the District of Columbia Workers' Compensation Act of 1979, D.C.Code §§ 36–301 et seq. (1997 & Supp.2000), and he provided written notice to his employer on July 26 of the same

---

arm or a hand, *id.* § 36–308(3)(A) & (C), and specifies the amount of disability compensation (*i.e.*, the "schedule award") to which an employee suffering from that partial disability is entitled. Thus, the loss of an arm entitles the employee to an award of "66⅔ % of the employee's average weekly wages" multiplied by "312 weeks' compensation"; the loss of a hand results in an award of 66⅔ % of those wages multiplied by "244 weeks' compensation." *Id.; see also Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 300 (D.C.2000) (explaining award mechanism).

2. This rather ponderous term appears to have been used during the administrative proceeding to describe Mr. Muhammad's hand, wrist and arm.

3. On March 19, 1999, as a result of the injuries to his back, Mr. Muhammad was awarded continuing permanent partial disability wage loss benefits for a period beginning on September 22, 1993. He received this award in a second proceeding independent from the one presently under review. The proceeding relating to the back injuries is relevant to the present case only insofar as the hearing examiner here ordered that the temporary total disability benefits that she awarded Mr. Muhammad in this case were to be offset against any wage loss benefits that the employer had already paid him for the same time periods. The Director affirmed this decision, and Mr. Muhammad has not asked us to review this aspect of the affirmed order.

year.[4]

On December 12, 1996, following consultations with various doctors, both through his medical care providers at Kaiser Permanente and as requested by Verizon in connection with his compensation claim, Mr. Muhammad underwent carpal tunnel surgery on his right hand. He was released to return to work on January 20, 1997, although he continued thereafter to receive physical therapy. However, even following the surgery and physical therapy, Mr. Muhammad continued to experience problems and pain in his right hand. At the time of the hearing, on February 23, 1999, Mr. Muhammad was taking Motrin and using a wrist brace to control the symptoms on an as-needed basis. From time to time, he had to stop working, and he sometimes missed work altogether.

At the February 23, 1999 hearing, Mr. Muhammad requested temporary total disability benefits from December 11, 1996

through January 23, 1997; wage loss benefits for approximately ten days intermittently between July and September 1998; a schedule award for a 25% permanent disability of the "right upper extremity" pursuant to D.C.Code § 36–308(3); and related medical costs. See also note 3, *supra.* In her compensation order, which was issued on June 30, 1999, the hearing examiner granted the requested relief in part. She awarded Mr. Muhammad temporary total disability benefits and intermittent wage loss benefits, offset against any wage loss benefits that Verizon had previously paid to Mr. Muhammad for the periods in question. The examiner also ordered Verizon to pay the related medical costs. The hearing examiner found, however, that Mr. Muhammad had not carried his burden of proving a "rateable impairment"[5] of his right hand and arm. Consequently, she denied Mr. Muhammad's request for a schedule award.[6]

---

**4.** *The hearing examiner concluded that Mr. Muhammad "knew, or should have known, [when he was diagnosed with carpal tunnel syndrome on April 12, 1996 that] his right hand symptoms were related to his work duties of typing information using a computer keyboard."* Mr. Muhammad did not provide written notice of his injury to Verizon until more than three months after this diagnosis, thereby failing to comply with the notice requirements of D.C.Code § 36–313 (1997). That section requires that the claimant provide the employer and the Mayor with written notice of an employment-related injury within *"30 days after the employee ... is aware or ... should have been aware of a relationship between the injury ... and the employment." Id.* § 36–313(a) & (b). The hearing examiner found, however, that Verizon acquired actual knowledge of Mr. Muhammad's injury and of its relation to his employment in late April 1996, when Mr. Muhammad informed his immediate supervisor of the relevant facts. Because Verizon had actual knowledge, it was not prejudiced by Mr. Muhammad's failure to give timely written notice. D.C.Code § 36–313(d)(1). Verizon has not challenged the agency's resolution of this issue.

**5.** A "rateable impairment" results where an employee suffers a partial disability, see *supra* note 1, not in the form of a lost "member" (*i.e.*, a limb, an eye, or other essential body part), but in the form of some permanent "partial ... loss of use of a member." D.C.Code § 36–308(3)(S). An employee suffering from such a partial loss is entitled to "[c]ompensation ... for proportionate ... loss of use of the member." *Id.* Thus, if Mr. Muhammad had been awarded a 20% rateable impairment of his "right upper extremity," as he requested, he would have received a schedule award equal to 20% of the award for total loss of that member. *Id.* § 36–308(3); *see also Washington Metro. Area Transit Auth. (WMATA) v. District of Columbia Dep't of Employment Servs.,* 683 A.2d 470, 473 & n. 2 (D.C.1996).

**6.** The hearing examiner also found that Mr. Muhammad did, in fact, suffer from carpal tunnel syndrome, that Verizon had introduced insufficient evidence to rebut the statutory presumption that this condition arose out of Mr. Muhammad's employment, D.C.Code § 36–321(1) (1997), and that Mr. Muhammad had provided Verizon with timely notice of

Mr. Muhammad filed an internal appeal to the Director in connection with the hearing examiner's ruling that he had not sustained a rateable impairment and was not entitled to a schedule award. On February 29, 2000, in a brief written opinion, the Director affirmed the compensation order. Mr. Muhammad now asks this court to review the Director's decision.

## II.

## STANDARD OF REVIEW

Mr. Muhammad contends that the findings by the hearing examiner presently at issue were not supported by substantial evidence, and that the Director erred in adopting them.[7] We have held that the "Director is limited to substantial evidence review of a hearing examiner's decision." *WMATA, supra* note 5, 683 A.2d at 476. Substantial evidence review "presents an issue of law which this court is in a position to address without need for deference to the agency's decision." *Id.* (internal alteration, quotation marks, and citation omitted).

To meet the substantial evidence standard,

(1) the [hearing examiner's underlying] decision must state findings of fact on each material, contested factual issue;

(2) those findings must be based on substantial evidence; and

(3) the conclusions of law must follow rationally from the findings.

the injury, see *supra* note 4. None of these findings has been challenged either before the agency or in this court.

7. In his *pro se* brief, Mr. Muhammad consistently refers to and challenges the hearing examiner's order, without focusing on the Director's affirmance of that order. Because "it is the Director's final decision, not the examiner's, which may be reviewed in this court," however, we treat Mr. Muhammad's argu-

*Stewart v. District of Columbia Dep't of Employment Servs.,* 606 A.2d 1350, 1351 (D.C.1992) (citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citations omitted). However, in making her factual findings, the "trier of fact"—in this case, the hearing examiner— "is entitled to draw reasonable inferences from the evidence presented." *Dell v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 102, 108 (D.C.1985).

## III.

## SUBSTANTIAL EVIDENCE REVIEW

The gravamen of Mr. Muhammad's argument to this court is that the hearing examiner's finding of no rateable impairment, and her resulting denial of the schedule award, were unsupported by substantial evidence. In reaching her conclusion, the hearing examiner "relied upon the findings, diagnosis[,] and conclusions in the medical reports of [Mr. Muhammad's] treating physicians at Kaiser Permanente." The examiner "rejected the opinion of William Launder, M.D., an orthopedic specialist who examined [Mr. Muhammad] ... at the request of [Mr. Muhammad's] counsel," and who found that Mr. Muhammad suffered a 25% permanent disability to this right hand and arm.[8] The hearing examiner declined to adopt Dr. Launder's views because the doctor

ment as applying to the Director's affirmance of the hearing examiner's order. *WMATA, supra* note 5, 683 A.2d at 472 (internal quotation marks and citation omitted).

8. The hearing examiner was also unpersuaded by a medical evaluation prepared by a physician selected by Verizon, who insisted that Mr. Muhammad had never suffered from carpal tunnel syndrome.

had based "his opinion regarding the percentage of permanent impairment largely upon [Mr. Muhammad's] reduced grip strength in his right hand." The examiner found the "reduced grip strength" analysis unconvincing because "the Kaiser physical therapy reports reflect [Mr. Muhammad's] lack of concern about grip weakness in April of 1997" and because Mr. Muhammad "also testified [that] he works out weekly at a gym, doing ten to fifteen push-ups at a session."

As an initial matter, we discern no substantial evidence supporting the hearing examiner's implicit finding that Mr. Muhammad's grip weakness did not contribute to any part of his permanent disability. The hearing examiner did not find—nor could she have found, see *infra*—that Mr. Muhammad did not suffer from grip weakness. Rather, she based her decision on her impression that "the Kaiser physical therapy reports reflect [Mr. Muhammad's] lack of concern about grip weakness in April of 1997."

It is true that, in April 1997, Mr. Muhammad was *less* concerned about grip weakness than about the pain he continued to experience in his right hand. His greater concern with the pain that he was suffering did not, however, take the issue of grip weakness out of the case. The fact that pain caused even more distress than loss of strength is not "such relevant evidence as a reasonable mind might accept as adequate to support [the hearing examiner's] conclusion" that grip weakness could not form the basis for any permanent partial disability suffered by Mr. Muhammad. *Stewart, supra,* 606 A.2d at 1351. Although the April 1997 Kaiser Permanente report reveals that Mr. Muhammad understandably wanted to have his

pain treated first, the same report identifies the achievement of increased strength in the patient's right grip as a goal of the continuing physical therapy. This report thus demonstrates that, at that very time, grip weakness problems were an ongoing medical concern. The Kaiser Permanente report is therefore consistent with, rather than contradictory to, Dr. Launder's finding that Mr. Muhammad suffered a significant permanent partial impairment as a result of continued grip weakness in his right hand.

■ Under these circumstances, we conclude that the hearing examiner's determination that Mr. Muhammad did not suffer a rateable impairment based on grip weakness is not supported by substantial evidence on the record as a whole. The hearing examiner also based her partial denial of Mr. Muhammad's claim on his testimony that "he works out weekly at a gym, doing ten to fifteen push-ups at a session." The evidence regarding push-ups, however, likewise fails to provide the requisite support for the hearing examiner's findings. Even if we were to assume that the ability to do push-ups negates the existence of grip weakness—and the record contains no substantiation of this not-at-all obvious proposition—Mr. Muhammad testified that although he exercises when he is *feeling well enough*, he *does not* go to the gym when he experiences substantial pain in his right hand. The compensation order contains no explanation of the examiner's apparent assumption that Mr. Muhammad's ability to do push-ups on days when his hand is not hurting is irreconcilable with the presence of a rateable impairment. We therefore conclude that the Director erred in affirming that aspect of the compensation order.[9]

9. In addition, the Director apparently concluded that the hearing examiner was faced

with "competing expert medical opinions" in reaching her conclusion concerning the

■ Even if Mr. Muhammad's grip weakness did not warrant a schedule award—and, as explained in the preceding discussion, we do not believe that the finding to that effect is supported by substantial evidence—there remains the question whether Mr. Muhammad's other symptoms, including the pain, tingling, reduced coordination, and general dysfunction of his right hand and arm, constitute a partial permanent disability entitling him to such an award. In *Murrell v. District of Columbia Dep't of Employment Servs.*, 697 A.2d 40, 42 & n. 3 (D.C.1997), we declined to decide whether pain alone could support a schedule award, but we did not exclude such a possibility. Dr. Launder found Mr. Muhammad's loss of grip strength to constitute a 15% disability, but he also specifically stated that Mr. Muhammad suffered from a "5% impairment of the hand" due to "loss of [finger] motion" and that Mr. Muhammad's "pain, dysfunction, and loss of endurance" constituted another 5% permanent disability. Thus, quite apart from the weakness in Mr. Muhammad's grip, there was evidence that Mr. Muhammad suffered from an additional 10% permanent impairment.

In her compensation order, the hearing examiner did not address the relevance of these additional symptoms, nor did she determine whether Mr. Muhammad has suffered a rateable impairment through them. The hearing examiner concluded that Mr. Muhammad had suffered "*no rateable impairment of the right upper extremity,*" but she did not focus her inquiry on whether he had suffered an impairment, but a lesser one than he had argued for. (Emphasis added.) The hearing examiner's failure to address the other symptoms is particularly significant because the Kaiser Permanente reports on which she relied, and particularly the April 30, 1997 report emphasized in her order, are replete with documentation of Mr. Muhammad's complaints about the pain, numbness, reduced coordination, and general dysfunction in his right hand.[10] Mr. Muhammad testified to the same effect. In our view, the evidence on which the hearing examiner professed to rely in reaching her conclusion on the rateable impairment issue supports, rather than contradicts, Dr. Launder's report with respect to Mr. Muhammad's symptoms.

In sum, the hearing examiner also failed to address Mr. Muhammad's claim that he suffered from conditions, other than the loss of grip strength, that entitled him to a schedule award based on a rateable impairment. The record therefore compels us to conclude that the hearing examiner's order did not "state findings of fact on each material, contested factual issue," *Stewart, supra,* 606 A.2d at 1351, by failing to address Mr. Muhammad's other symptoms, such as pain, dysfunction, and loss of mobility, as a possible basis for a schedule

---

schedule award. As we have demonstrated in the preceding discussion, the record does not bear this out.

**10.** The April 30, 1997 report notes that Mr. Muhammad "is concerned about the pain he has in his [right] hand" and that that pain causes him problems with typing and with moving the "mouse." A November 30, 1998 report by a Kaiser Permanente physician notes that Mr. Muhammad suffered pain in his right hand and that he had endured "numbness and pain in his hands for five years," with the symptoms having recurred following the carpal tunnel release surgery. At the hearing, Mr. Muhammad testified that he continued to experience pain and stiffness in his hand. His symptoms sometimes caused him to have to stop typing, and they caused him to work more slowly than the three-minute-per-call standard set for Verizon customer service representatives. Indeed, he testified that on several occasions, his condition compelled him to take consecutive days off from work.

award. For that reason, as well, the challenged portions of the compensation order are not supported by substantial evidence.

## IV.

### CONCLUSION

For the foregoing reasons, we conclude that the Director erred in affirming the hearing examiner's order, in which the examiner found that Mr. Muhammad did not suffer from a rateable impairment, and in which the examiner denied Mr. Muhammad's request for a schedule award. We therefore vacate the agency's decision and remand the case for further proceedings consistent with this opinion.

*So ordered.*