**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                              *Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
RONALD BRICKHOUSE,
                              *Respondents.*

No. 01-2401

On Petition for Review of an Order
of the Benefits Review Board.
(01-765)

Argued: September 25, 2002

Decided: December 27, 2002

Before WILKINS, MICHAEL, and KING, Circuit Judges.

---

Petition for review denied by published opinion. Judge King wrote
the opinion, in which Judge Wilkins and Judge Michael joined.

---

## COUNSEL

**ARGUED:** Jonathan Henry Walker, MASON, COWARDIN &
MASON, P.C., Newport News, Virginia, for Petitioner. John Harlow
Klein, MONTAGNA, BREIT, KLEIN, CAMDEN, L.L.P., Norfolk,
Virginia, for Respondent Brickhouse. Sarah Catherine Crawford,

UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** Eugene Scalia, Solicitor of Labor, John F. Depenbrock, Associate Solicitor for Employee Benefits, Samuel J. Oshinsky, Senior Appellate Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

---

**OPINION**

KING, Circuit Judge:

In September of 1993, Ronald Brickhouse suffered a back injury while working at Newport News Shipbuilding & Dry Dock Company ("Newport News"). On September 22, 1993, he commenced receiving disability benefits from Newport News, pursuant to §§ 4 and 8 of the Longshore and Harbor Workers' Compensation Act (the "Act"). More than three years later, in January 1997, Newport News offered Brickhouse a different job. Brickhouse declined the offer because he was participating in a vocational rehabilitation program administered by the Office of Workers' Compensation Programs (the "OWCP"). Viewing his refusal of its employment offer as unreasonable, Newport News ceased paying his disability benefits. Brickhouse then filed this claim with the Director of the OWCP (the "Director"), asserting that Newport News had improperly terminated his benefits. An Administrative Law Judge (the "ALJ") agreed with Brickhouse and ordered Newport News to pay benefits. The Benefits Review Board (the "BRB") affirmed the ALJ, and Newport News has petitioned for our review. As explained below, we deny its petition.

I.

A.

In 1993, Brickhouse worked at Newport News as a senior quality inspector, with an annual salary of over $30,000 ($588.21 per week). On September 21, 1993, Brickhouse injured his back. He was unable to return to work and began receiving temporary total disability benefits from Newport News.[1] Following his injury, Brickhouse under-

---

[1]Under the Act, if an employee has a temporary total disability, his employer must pay two-thirds of his pre-injury weekly wages. 33 U.S.C.

went two back surgeries, first on March 3, 1994, and again on August 9, 1994. While he was recovering, Newport News terminated his position as part of a reduction-in-force. On April 17, 1995, Brickhouse's treating neurosurgeon placed him under permanent work restrictions. Although Brickhouse was no longer working for Newport News, the work restrictions would have prevented him from returning to his work as a senior quality inspector. In fact, Newport News did not, in April of 1995, have any jobs available that were suitable for Brickhouse, given the restrictions imposed by his neurosurgeon.

In an attempt to return Brickhouse to gainful employment, the Director referred him to a vocational rehabilitation counselor. The counselor proposed that Brickhouse return to school to obtain an Associates of Arts Degree in Graphics Communications, and she estimated that Brickhouse could thereafter earn approximately $22,500 annually. Based on this proposal, the OWCP developed a vocational rehabilitation program for Brickhouse (the "Program"). In so doing, it agreed to pay for Brickhouse to attend Thomas Nelson Community College ("TNCC") in Hampton, Virginia, so long as Brickhouse remained a full-time student each semester, attended classes regularly, and maintained a 2.0 grade point average. The OWCP agreed to pay his education costs for a maximum of two years.

In May of 1995, Brickhouse began his course work at TNCC. In December of 1996, when Brickhouse needed two additional courses to obtain his degree, Newport News sought to hire him as a senior engineering analyst.[2] Brickhouse interviewed with Newport News in January of 1997, and he was offered the new position at an annual salary of $31,068. The job offer came with the condition that Brickhouse could be "terminated with or without notice, at any time, at the option of the Company or yourself." Brickhouse did not believe he could

---

§ 908(b). Thus, Newport News paid Brickhouse two-thirds of his pre-injury wages, $392.14 per week, beginning on September 22, 1993. The parties have stipulated that Newport News properly paid benefits to Brickhouse from September 22, 1993, until January 6, 1997.

[2]A senior engineering analyst position at Newport News was essentially a "desk job." The parties agree that Brickhouse could have worked at such a position with his work restrictions.

handle the new job while completing the Program, so he advised Newport News that he would not accept its offer unless he could temporarily work part-time, or with flexible hours. Brickhouse alternatively suggested that he could begin work in May of 1997, after obtaining his degree. Newport News declined to accept his proposals and decided that Brickhouse had unreasonably refused its offer of employment. Thus, it concluded that Brickhouse was not entitled to continue receiving disability benefits, and it terminated them, effective January 6, 1997.

### B.

In February of 1997, Brickhouse filed this claim, alleging that Newport News had improperly terminated his disability benefits, and the Director referred his claim to the ALJ. In May of 1997, Brickhouse obtained his degree, and he began working at the *Newport News Gazette* as a graphics designer on December 29, 1997. Thus, when proceedings commenced before the ALJ in January 1998, Brickhouse sought retroactive disability benefits for the period from January 6, 1997, to December 29, 1997.

In the ALJ proceedings, Brickhouse asserted that, under the authority of *Abbott v. Louisiana Insurance Guaranty Association*, 27 B.R.B.S. 192 (1993), *aff'd*, 40 F.3d 122 (5th Cir. 1994), he was entitled to benefits despite the Newport News offer of re-employment. Pursuant to *Abbott*,[3] a claimant is entitled to benefits if he can demonstrate that suitable alternative employment is reasonably unavailable due to his participation in a rehabilitation program. *Id.* Based on the *Abbott* precedent and the evidence submitted, the ALJ agreed with Brickhouse and made, *inter alia*, the following findings:

- The OWCP had approved the Program;

- Newport News knew that Brickhouse was entering the Program and did not object;

---

[3]Unless otherwise specified, when we refer to *Abbott*, we are referring to the BRB's decision in that matter.

- Brickhouse had diligently pursued his studies in the Program; and

- The Newport News job offer to Brickhouse lacked employment security.

*Brickhouse v. Newport News Shipbldg. & Dry Dock Co.*, 1997-LHC-1183, Decision and Order, at 10 (Apr. 13, 1998) (the "ALJ Decision"). On the job security issue, the ALJ emphasized that Newport News could have terminated Brickhouse at any time, and that Brickhouse would likely be subject to another reduction-in-force as early as the year 2000. *Id.* The ALJ also found that Brickhouse could not have worked during the day for Newport News and still pursued his degree at night, because the required courses were not offered in the evening. Accordingly, the ALJ concluded that Brickhouse could not have performed the job offered by Newport News while also completing the Program. Brickhouse was thus deemed by the ALJ as entitled to permanent total disability benefits from January 6, 1997, to December 29, 1997. *Id.* at 10-11.

C.

Newport News appealed the ALJ Decision to the BRB, but Brickhouse lost his job while the appeal was pending because the *Newport News Gazette* went out of business. Thus, he requested modification of the ALJ Decision, seeking permanent partial disability benefits.[4] As a result, the BRB dismissed the appeal so that the ALJ could consider his motion. Newport News then also requested modification, asserting new grounds to reverse the ALJ Decision.

In its motion for modification, Newport News asserted that, contrary to the ALJ's findings, one of the two classes Brickhouse needed in order to complete the Program was offered at night during the Spring of 1997, and the other class was offered at night during the Summer of 1997. Newport News asserted that Brickhouse could have completed the Program while also working. Thus, Newport News

---

[4]A party may seek modification "on the ground of a change in conditions or because of a mistake in a determination of fact." 33 U.S.C. § 922.

contended that he was not entitled to any disability benefits. In denying the Newport News modification request, the ALJ acknowledged that he had incorrectly found that the classes were only offered during the day, but he concluded that it was unclear whether Brickhouse could have enrolled in the night classes. *Brickhouse v. Newport News Shipbldg. & Dry Dock Co.*, 1997-LHC-1183, Decision and Order on Motions for Modification, at 5 (Dec. 7, 1999) (the "Modification Decision"). The ALJ premised this conclusion on Brickhouse's assertion that the course catalog from TNCC did not show that the classes were offered at night. The ALJ also deemed it unclear whether one of the courses required lab work, and he concluded that, if lab work were essential, the class "could have prevented [Brickhouse] from taking the offered shipyard job." *Id.* Thus, the ALJ declined to modify his earlier ruling that Brickhouse was entitled to permanent total disability benefits from January 6, 1997, to December 29, 1997. *Id.*

In his Modification Decision, the ALJ also considered Brickhouse's motion for modification, in which he asserted entitlement to permanent partial disability benefits. Under the Act, if an employee has a permanent partial disability, his employer must pay two-thirds of the difference between the employee's pre-injury wages and his current wage-earning capacity. 33 U.S.C. § 908(c)(21). Before losing his newspaper job, Brickhouse was earning $314.28 per week, and the ALJ ruled that this sum constituted his wage-earning capacity. Thus, because his earning capacity of $314.28 was less than his pre-injury wage of $588.21, the ALJ awarded him $182.62 per week, from December 30, 1997, and continuing. *Id.* at 6-7.

D.

In January 2000, Newport News appealed the ALJ Decision and the Modification Decision to the BRB, asserting that Brickhouse was not entitled to benefits because he would have earned more as a senior engineering analyst ($31,068) than in the graphics communication field ($22,500). The BRB rejected this contention, concluding that the *Abbott* principle applies when rehabilitation would not necessarily result in an increased wage-earning capacity. *Brickhouse v. Newport News Shipbldg. & Dry Dock Co.*, 98-1164, Decision and Order, at 8 (Feb. 6, 2001) (the "BRB Decision"). The BRB also considered the ALJ's factual findings, focusing on the Program's requirements, i.e.,

that Brickhouse enroll as a full-time student and complete the Program within two years. It concluded that the evidence sufficiently supported the ALJ's "determination that claimant could not have accepted [Newport News's] job offer." *Id.* at 7. Also, because only one of the required courses was offered at night during the Spring of 1997, Brickhouse would have been unable to complete his degree by May of 1997 — the end of the two-year period allowed under the Program. Thus, the BRB agreed with the ALJ that Brickhouse was entitled to retroactive benefits from January 6, 1997, to December 29, 1997. *Id.* at 8. It reversed and remanded the Modification Decision, however, with respect to his claim to permanent partial disability benefits. *Id.* at 9-10.

On remand, Newport News contended that the ALJ had improperly found Brickhouse's wage-earning capacity to be $314.28 per week, in that he had obtained employment paying $360 per week. The ALJ agreed and found that Brickhouse's wage-earning capacity was $360 per week. Thus, he reduced Brickhouse's benefits from $182.62 per week to $152.10, effective March 10, 1999. *Brickhouse v. Newport News Shipbldg. & Dry Dock Co.*, 1997-LHC-1183, Decision and Order on Remand, at 3 (May 23, 2001).

Newport News then appealed to the BRB which, on October 26, 2001, affirmed.[5] Newport News has petitioned this Court for review, and we possess jurisdiction pursuant to 33 U.S.C. § 921(c).

## II.

## A.

Before assessing the issues raised in Newport News's petition for review, it is important to identify certain legal principles governing

---

[5]When Newport News appealed to the BRB after the remand decision of May 23, 2001, it did not challenge the ALJ's findings. Instead, it requested an expedited appeal so that it could seek a prompt review in this Court. The BRB expedited the appeal and affirmed, ruling that its earlier decision (the "BRB Decision") constituted the law of the case. Consequently, in reviewing the Newport News petition, we are assessing the BRB Decision.

a disabled claimant's entitlement to total disability benefits. To be entitled to such benefits, a claimant must first establish a prima facie case by demonstrating an inability to return to prior employment due to a work-related injury. *Norfolk Shipbldg. & Dry Dock Co. v. Hord*, 193 F.3d 797, 800 (4th Cir. 1999). If the claimant makes this showing, "the burden shifts to the employer to demonstrate the availability of suitable alternative employment which the claimant is capable of performing." *Id.*[6] (internal quotations and citations omitted).

An employer is entitled to satisfy its burden in two ways. First, the employer may demonstrate that it offered the employee suitable alternative employment. *Id.* Second, "the employer may demonstrate that suitable alternative employment is available to the injured worker in the relevant labor market." *Id.* Under our precedent, if the employer meets its burden, its obligation to pay disability benefits is either reduced or eliminated, unless the disabled employee shows "that he diligently but unsuccessfully sought appropriate employment." *Id.*

B.

This brings us to the primary issue raised in this case, i.e., whether ongoing participation in an approved rehabilitation program can entitle an employee to refuse an offer of suitable alternative employment. The BRB has ruled that a claimant is entitled to benefits if he demonstrates that suitable alternative employment is reasonably unavailable due to his participation in a rehabilitation program. *See Abbott*, 27 B.R.B.S. 192 (1993), *aff'd*, 40 F.3d 122 (5th Cir. 1994). In *Abbott*, the claimant had injured his back and was taking classes pursuant to an approved rehabilitation program, and he sought disability benefits for the time period he was enrolled in the program. The Louisiana Insurance Guaranty Association ("LIGA") demonstrated that minimum-wage jobs were available to Abbott and asserted that, as a result, he was not entitled to benefits. Abbott maintained, on the other hand,

---

[6]Other circuits also follow this burden-shifting scheme. *See Crum v. General Adjustment Bureau*, 738 F.2d 474, 479 (D.C. Cir. 1984); *New Orleans (Gulfwide) Stevedore v. Turner*, 661 F.2d 1031, 1038 (5th Cir. Unit A 1981); *Bumble Bee Seafoods v. Director, OWCP*, 629 F.2d 1327, 1328-29 (9th Cir. 1980); *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 935-36 (2d Cir. 1976).

that since he could not accept such employment and complete his rehabilitation program, he was entitled to benefits. The ALJ agreed with Abbott, and the BRB affirmed.

The Fifth Circuit, in an opinion authored by Justice White, affirmed the BRB. *Abbott v. Louisiana Ins. Guar. Ass'n*, 40 F.3d 122, 126 (5th Cir. 1994). In so doing, the court focused on the "Act's goal of promoting rehabilitation of injured employees to enable them to resume their places, to the greatest extent possible, as productive members of the work force." *Id.* at 127. Justice White concluded that it "would be unduly harsh . . . to find that suitable alternative employment was reasonably available if the claimant demonstrates that, through his own diligent efforts at rehabilitation, he was ineligible for such a job." *Id.* at 128. (internal quotations and citations omitted).

Since the Fifth Circuit's *Abbott* decision, the BRB has consistently permitted claimants to receive total disability benefits if suitable alternate employment is unavailable due to participation in an approved rehabilitation program. *See, e.g.*, *Gregory v. Norfolk Shipbldg. & Dry Dock Co.*, 32 B.R.B.S. 264 (1998). In *Gregory*, the BRB articulated certain factors that should be relevant in deciding such issues. In particular, an ALJ should consider:

- Whether enrollment in a rehabilitation program precluded any employment;

- Whether an employer agreed to a rehabilitation program and continued payment of benefits;

- Whether completion of such a program would benefit a claimant by increasing his wage-earning capacity; and

- Whether a claimant demonstrated diligence in completing such a program.

*Id.* In its post-*Gregory* administrative proceedings, the BRB has consistently applied these and other factors in assessing entitlement issues under *Abbott*.[7]

---

[7]*See, e.g.*, *Brown v. National Steel & Shipbldg. Co.*, 34 B.R.B.S. 195 (2001); *Kee v. Newport News Shipbldg. & Dry Dock Co.*, 33 B.R.B.S. 221 (2000).

With this background in mind, we turn to the merits of the Newport News petition for review.

### III.

In reviewing the BRB Decision, we must determine "whether the [BRB] observed its statutorily-mandated standard for reviewing the ALJ's factual findings." *Newport News Shipbldg. & Dry Dock Co. v. Stallings*, 250 F.3d 868, 871 (4th Cir. 2001) (internal quotations and citations omitted). We are also guided by the principle that an ALJ's factual findings "shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). We consider "substantial evidence" to require "more than a scintilla but less than a preponderance." *Newport News Shipbldg. & Dry Dock Co. v. Faulk*, 228 F.3d 378, 380-81 (4th Cir. 2000). Furthermore, an ALJ's findings "may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's . . . credibility assessments, and . . . the scope of review of ALJ findings is limited." *Newport News Shipbldg. & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988). In reviewing legal issues, the BRB's "adjudicatory interpretation of the [Act] is entitled to no special deference, and is subject to our independent review. However, a reasonable interpretation of the [Act] by the Director should be respected."[8] *Stallings*, 250 F.3d at 871 (internal quotations and citations omitted).

---

[8]Newport News asserts that the Director has never permitted a claimant to demonstrate that suitable alternative employment is reasonably unavailable when the earnings from such employment would be greater than the claimant's expected earnings after rehabilitation. Therefore, it characterizes the Director's interpretation as merely a litigation position entitled to no deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988) (refusing to give "[d]eference to what appears to be nothing more than an agency's convenient litigating position").

Unlike the situation in *Bowen*, the Director's position here is not just its litigation position. Since *Abbott*, the Director has consistently maintained that a claimant is entitled to demonstrate an inability to accept an offer of employment because of participation in a rehabilitation program. We "simply see no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer v. Robbins*, 519 U.S. 452, 462 (1997).

IV.

In its petition for review, Newport News makes two primary contentions. First, it maintains that the ALJ improperly concluded that the Act permits a claimant to receive benefits when suitable alternative employment would pay more than the claimant was expected to earn after rehabilitation. In the alternative, Newport News contends that the ALJ's decision to award benefits to Brickhouse is not supported by substantial evidence. The Director maintains, on the other hand, that, where a job offer arises while a claimant is enrolled in a vocational rehabilitation program, the ALJ must simply decide whether a claimant has demonstrated that suitable alternative employment is reasonably unavailable. While the Director acknowledges that an ALJ should consider whether completion of the rehabilitation program will increase the claimant's wage-earning capacity, he asserts that this factor, standing alone, is not dispositive. Finally, the Director contends that the ALJ's decision is supported by substantial evidence. For the reasons explained below, we agree with the Director on both issues.

A.

The Director's interpretation of the Act is reasonable and must be sustained. First, the Act seeks to ensure that longshore employees who are disabled from work-related injuries have economic security in the *long-term*. To accomplish this goal of long-term economic security, an ALJ is obliged to weigh an array of factors in assessing the extent of a claimant's disability. Along these lines, the term "disability" is not defined by the Act as an actual physical injury, but as a complex "measure of earning capacity lost as a result of a work-related injury." *Metro Stevedore Co. v. Rambo*, 521 U.S. 121, 127 (1997) (citing 33 U.S.C. § 902(10)). As Justice White observed: "[D]isability under the Act is determined not only on the basis of physical condition, but also on factors such as age, education, employment history, rehabilitative potential, and the availability of work that the claimant can do." *Abbott*, 40 F.3d at 127 (internal quotations and citations omitted). Furthermore, the wage-earning capacity of a disabled claimant is to be determined on the basis of factors "which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it *may naturally extend into the future*." 33 U.S.C. § 908(h) (emphasis added). As such, the Act

carries with it the "long-term remedial purpose [to] 'compensate for any injury-related reduction in wage earning capacity through the claimant's *lifetime*.'" *Edwards v. Director, OWCP*, 999 F.2d 1374, 1375-76 (9th Cir. 1993) (emphasis in original) (quoting *Randall v. Comfort Control, Inc.*, 725 F.2d 791, 799 (D.C. Cir. 1984)).

Second, the Act strongly emphasizes the importance of vocational rehabilitation. In this regard, the Director possesses wide latitude in his development of vocational rehabilitation programs so that disabled employees are able to be productive members of the work force. Specifically, the Secretary of Labor is obliged, under the Act, to provide for the "vocational rehabilitation of permanently disabled employees." 33 U.S.C. § 939(c)(2). And the Secretary has concluded, in his regulations, that "[t]he objective of vocational rehabilitation is the return of permanently disabled persons to gainful employment . . . *through a program of reevaluation or redirection of their abilities, or retraining in another occupation, or . . . job placement assistance*." 20 C.F.R. § 702.501 (emphasis added). Pursuant to this mandate, the Director is accorded "significant flexibility in devising such training programs." *Abbott*, 40 F.3d at 128 (citing 20 C.F.R. § 702.506(b)). Therefore, the Act, and the legal principles under which it is implemented, mandate that vocational rehabilitation be an important tool in returning disabled employees to gainful employment, and in ensuring that such employees possess a measure of long-term economic security.

Accordingly, a disabled claimant should be entitled to demonstrate that, in appropriate circumstances, suitable alternative employment is reasonably unavailable due to his participation in an approved rehabilitation program. And, in assessing whether a claimant has made such a showing, an ALJ should not base his decision on any single factor. Instead, the guiding legal principles require consideration of a wide range of the relevant factors in reaching the proper result in each case. Contrary to Newport News's assertion, an immediate increase in wage earning capacity, standing alone, may be important, but it is not necessarily determinative. The BRB and the ALJ, therefore, were correct to apply the *Abbott* principles in this case. Consequently, we must turn to and assess Newport News's other contention: whether the ALJ's findings are supported by substantial evidence.[9]

---

[9]Newport News also asserts that Virginia's at-will employment doctrine precluded the ALJ from considering the lack of job security in the

## B.

On this record, the ALJ's ruling that Brickhouse was unable to accept Newport News's employment offer because of his participation in the Program is amply supported by the evidence. First, the OWCP had determined that Brickhouse was a proper candidate for rehabilitation and had developed and approved the Program. Second, the Program's requirements entitled the ALJ to find that Brickhouse could not have accepted the employment offer of Newport News and still completed the Program. Under the Program, Brickhouse was required to be a full-time student, to attend classes regularly, and to maintain a 2.0 grade point average. Further, he was obliged to complete the Program by May of 1997, but one of his required courses was not offered as an evening course until after that date.[10] These requirements were incompatible with employment at Newport News. Finally, because Brickhouse was only one semester from obtaining his degree and completing the Program, the ALJ was entitled to conclude that it was unreasonable for Newport News to compel him to choose between the Program and the new job. Thus, substantial evidence supports the ALJ's conclusion that Brickhouse was entitled to benefits because suitable alternative employment was not reasonably available due to his participation in the Program.

---

Newport News job offer. On the contrary, the at-will employment doctrine does not preclude consideration of the job security issue in this instance. Congress has provided for rehabilitation programs so that disabled employees can become productive members of the work force in the long-term. Thus, the ALJ properly considered the issue of job security, along with the other evidence presented.

[10]Newport News maintains that Brickhouse could have personally paid for the course offered in the Summer of 1997, and that Newport News would have reimbursed him through an in-house program. The ALJ was also entitled to discount this contention, because it would have required Brickhouse to pay his own rehabilitation costs and rely on a possible reimbursement by Newport News instead of having the OWCP advance those costs directly.

V.

Pursuant to the foregoing, the petition for review must be denied.

*PETITION FOR REVIEW DENIED*